COLLIER and Others *v.* COLLIER and Others.

RESULTING TRUST.—*Evidence.*—Parol evidence to establish a resulting trust in land held by an absolute conveyance, after a long lapse of time and the death of the nominal purchaser, must be strong and clearly relevant.

APPEAL from the Bartholomew Circuit Court.

GREGORY, J.—Suit by the appellees against the appellants. The complaint charges, "that on the 9th day of March, 1833, Daniel Coleman was the father of Elizabeth Collier, who was the wife of Stewart Collier, late of said county, deceased. On said date, said Daniel Coleman made his last will and testament, and by the terms of said will he loaned one equal share of his estate, after it was converted into money, to said Elizabeth Collier, during her life, and at her death he gave it to the children of said Elizabeth Collier. Said testator died in 1835, without in any way revoking said will, and the same was, at his death, in full force, and, as such will, it was duly admitted to probate in the county court of Gallatin county, Kentucky. A copy of said will is filed with the complaint and made part thereof. By virtue of the provisions of said will, said Elizabeth Collier received, by way of loan from said testator, some seven hundred dollars, which fund belonged to her children, which she might leave at her death. To better carry out the intention of said testator, when said money came to the hands of said Elizabeth Collier, it was agreed by parol between her and her husband, Stewart Collier, that he should take said money, or any portion thereof, and enter land therewith, and hold the same in trust for the use and benefit of the children of said Elizabeth Collier. In pursuance of said will and said agreement between said Elizabeth and Stewart Collier, she put said legacy in the hands of her said husband to carry out said bequest and agreement for the benefit of her said children, and in pursuance thereof said Stewart Collier, with some three hundred dollars of said money for the benefit of said children, entered

the following described land in Bartholomew county, in the State of Indiana to wit:—

"The southeast quarter and the east half of the southwest quarter of section twenty-nine, township nine, north, in range seven, east, containing two hundred and forty acres, more or less.

"The patents for said land were issued in the name of said Stewart Collier. Said Elizabeth and Stewart Collier took possession of said land, improved and cultivated the same, said Stewart Collier getting and taking the income therefrom to his own use, until about the 2d day of January, 1863, when the said Elizabeth Collier departed this life, leaving her said husband still in the possession of said land. The east half of the southwest quarter aforesaid was sold by said Stewart, after the death of said Elizabeth, to Logan C. Collier. Said Elizabeth Collier left, as her only children, the plaintiffs, except those mentioned as the husbands of some of the plaintiffs.

"After the death of his said first wife, Elizabeth Collier, said Stewart Collier intermarried with the defendant, Mary A. Collier, and by her had the other two defendants, Richard Collier and Stewart Collier, who are both infants under twenty-one years. Said Stewart Collier, Sen., died intestate, and left as his heirs the plaintiffs and defendants, except as above. Said plaintiffs had no knowledge whatever of the existence of said will, or the contents thereof, or said agreement, until after the death of said Stewart Collier, Sen. Said Collier died with the ostensible title to said land in him, and said widow and said other defendants claim an interest in said land as heirs at law of said Stewart Collier."

The following is all of the will having any bearing on this case:—

"Item 4. It is my will that all my just debts be paid; that the money arising from the sale of my estate be divided in the following manner, viz:—In the first place I wish

all my children to be made equal, except the fifty dollars
extra to my son William, and *after they are made equal in
property or money, I divide the balance as follows:*—  \*  \*  \*
I lend to my daughter, Elizabeth Collier, one equal part of
my estate, and at her death I give that I have lent her to
her children."

Mary A. Collier answered by the general denial, and two
other paragraphs to which the court sustained demurrers.
The cause was tried by the court, the following being the
substance of the evidence:—Patents for the land in ques-
tion, from the United States to Stewart Collier, reciting
that,

"*Whereas*, The said Stewart Collier has deposited in the
general land office a certificate of the register of the land
office at Jeffersonville, whereby it appears that full payment
has been made by said Stewart Collier for, &c., the United
States do give and grant unto the said Stewart Collier and
his heirs" the land described in the complaint.

The patents all bear date September 25th, 1835. The de-
fendants objected to the admission of these patents, but the
objection was overruled, and defendants excepted.

Plaintiffs then introduced Logan C. Collier, and offered
to prove by him parol declarations made by Stewart Collier
and Elizabeth Collier, in his presence, to establish the trust
in said real estate, and defendants at the time objected for
the reasons:—1. That such evidence was irrelevant and im-
material to the issues in said cause.  2. That it was not
proper to establish a trust, after the death of the trustee,
by parol declarations made by the alleged trustee before his
death.  3. That parol evidence was not admissible to vary,
alter or contradict the terms of an absolute conveyance.

This objection was overruled, and the defendants excepted.
Said Logan C. Collier then testified in substance as follows:
"Am one of the plaintiffs.  Patents cover land on which
Stewart Collier lived and died.  Heard conversation be-
tween my father and mother as to where money with
which land was entered came from.  They said the money

came from my mother's father, and was used to enter this land. * * * Heard conversation at William E. Herod's. My parents and William Coleman were present. Mother said to William Coleman, if she should see one of his slaves running away, she would give him a piece of bread and tell him to go on. Coleman said he did not see that it was much better to sell slaves and live on the money than to keep them in bondage. Father was present. Mother had owned a slave in Kentucky, which she sold before she came to Indiana. Have heard my father and mother speak of her money buying land; she would tantalize him about it."

Plaintiffs offered Jacob Davis as a witness to prove certain parol statements made by Stewart Collier, to establish said trust, and defendants objected for the following reasons:—

1. That such evidence was irrelevant and immaterial to the issue in said cause. 2. That it was not proper to establish a trust, after the death of the trustee, by parol declarations made by the trustee before his death. 3. That parol evidence was not admissible to vary, alter or contradict the terms of an absolute conveyance.

The objection was overruled, and defendants at the time excepted. Jacob Davis then testified in substance as follows:—

"Knew Stewart Collier; saw him five or six years ago; had conversation with him about this matter; it was in 1861; were walking on his farm; asked him how he got his start here; said his start here was through some money he got through his wife from her father's estate—about $400; said he entered his land before he moved to this State; think he said he got the money to buy it through his wife."

The will of Daniel Coleman was then offered in evidence and objected to. The objection was overruled, and exception taken.

The tract book of Bartholomew county, showing that

the land in question was entered December 3d, 1834, was read in evidence.

The depositions of Lewis Coleman, Dabney Coleman and William L. Coleman were read in evidence. Dabney Coleman testified that Collier came to Indiana in 1834 or 1835. William L. Coleman testified that it was in 1835 or 1836. Said William L. Coleman also testified as follows:—

*Answer to Question* 6.—"I heard Elizabeth Collier say that they had taken her money out there and entered the land upon which they were living. She asked me if I did not think they had done better for the children by investing the money in land out there than they could have done in Kentucky. This was two or three years after they removed to Indiana. Stewart Collier was present."

*Answer to Question* 9.—"Five or six years after this conversation I was at Collier's house in Indiana; Stewart Collier was present. A conversation came up in regard to slaves. Elizabeth sat down by me and said, if she should see one of my negroes running off, she would give him a piece of bread and tell him to clear himself. I then asked her how much better she had done, that she had taken her interest her father's negroes sold for, and purchased that land they were living upon, and raised her children on the proceeds to help steal my negroes. Stewart Collier then spoke up and said, 'That is the fact, Betsy; what William has told you is true.' He said he was sorry she had said anything about it."

At the proper time before the trial, the defendants moved to suppress the depositions of said Lewis Coleman, Dabney Coleman, and William L. Coleman, and also various questions and answers in the deposition of each. These motions were overruled, and the defendants excepted.

This motion was made as to the answers to the sixth and ninth questions in said William L. Coleman's deposition, for the reasons that said answers were irrelevant and immaterial to the issues in said cause, seek to vary a written in-

strument by parol evidence, and are evidence of parol declarations to bind said Stewart Collier after his death; and was overruled and excepted to as to each of said answers.

The court below found for the plaintiffs, whereupon the defendants moved for a new trial. One of the grounds for the new trial was, that the finding was contrary to the evidence.

Here was an attempt to establish by parol evidence, a trust in land held by an absolute conveyance by the deceased, Stewart Collier, for more than thirty years.

We think the evidence does not sustain the finding. There is no proof that Elizabeth Collier received any money under the clause of the will by which the testator gave her one equal part of his estate during her life, and at her death to her children. She may have received the four or five hundred dollars spoken of by the witnesses under the clause equalizing the children of the testator.

The entire testimony as to the trust consists of declarations of Elizabeth Collier and her husband, Stewart Collier, in loose conversations, in which nothing was said about any agreement or understanding between the latter and the former that the latter should invest the money in land, to be held by him in trust for the children of the former. It would be a dangerous innovation of the rules governing this class of cases to allow this finding to stand.

The court erred in overruling the motion for a new trial.

The judgment is reversed, and the cause remanded, with directions to grant a new trial, and for further proceedings.

*F. T. Hord, S. Stansifer,* and *F. Winter*, for appellants.