## PARMLEE ET AL. *v.* SLOAN ET AL.

JURY.—*Communication to.*—While a jury was out deliberating upon a cause, the judge, at his room in a hotel, in the presence of counsel in the cause, prepared written directions for the jury in reference to the sealing of their verdict and separation after the same was made, which directions were then read aloud and sent to the jury without objection.

37   469
141   562
37   469
146   392

37   469
161   295

Parmlee *et al. v.* Sloan *et al.*

*Held,* that the assent of counsel to the directions would be inferred.

ACTION.—*Cause of Action.*—Mere intentions, unexecuted, do not constitute a contract, a tort, or a crime, and are not the subject of legal or equitable judicial investigation.

TRUST.—*Parol Evidence.*—To establish a resulting trust in lands in favor of creditors, the terms of the agreement must be clearly and satisfactorily shown, and parol evidence to establish the same in opposition to the terms of a written conveyance should be received with caution.

SAME.—*Innocent Purchaser.*—A person who purchases real estate from one who bought at a sale on execution cannot be bound or affected by any agreement or trust, of which he had no notice or knowledge, between his vendor and the judgment debtor.

EVIDENCE.—*Immaterial Evidence.*—The admission of evidence that is only immaterial cannot affect a judgment which is correctly rendered upon the material evidence in the cause.

APPEAL from the Warren Circuit Court.

DOWNEY, J.—Suit by the appellants against the appellees. The facts as alleged in the complaint, which consists of two paragraphs, and amendments thereto, are, in substance, as follows: that Sloan was largely indebted to the plaintiffs and others, and was at the same time the owner of valuable real estate; that judgments were recovered by some of his creditors, other than these plaintiffs, in the United States Circuit Court, on one of which Daniel Yandes became replevin bail for Sloan.   Executions were afterward issued on these judgments, by virtue of which the real estate of Sloan was sold, and Yandes became the purchaser at the marshal's sale, receiving deeds and causing them to be recorded; that Sloan induced persons not to bid on the lands, by which means they sold for less than their value; that he and his wife, afterward, in order to cheat and defraud the plaintiffs, conveyed to Yandes all their interest in said land and other lands; that Yandes was to reimburse himself for the amounts paid, with interest on the same, etc., and account to Sloan for the overplus; that, accordingly, Yandes did sell enough of the property to reimburse himself, except as to the sum of two thousand nine hundred dollars; that the unsold land was of the value of eighteen thousand six hundred dollars; that there were also certain judgments recovered by Yandes for amounts

Parmlee *et al. v.* Sloan *et al.*

due for purchase-money of real estate sold by him. It is further alleged that all of the unsold real estate, except sixty acres, was conveyed, and the judgments assigned by Yandes to one Sewell, who is a defendant; that if there was any consideration for the deed from Yandes to Sewell and the assignment of the judgments, it was furnished by Sloan; that Sewell had full notice of the facts, and accepted the deed, and was to hold the lands, etc., as Yandes had held them; that Sloan has all the time possessed, occupied, and used the lands. The plaintiffs also allege the recovery of judgment on their several claims, and pray that the deed from Yandes to Sewell, and the assignment of the notes, may be adjudged void and set aside, that the lands be declared subject to the payment of their claims, and for general relief.

Sewell answered, first, the general denial; second, that Sloan owed him seven thousand four hundred and seventy-seven dollars and ninety-two cents, and could not pay it; that it was rumored that he had an equitable interest in the lands in question, a right which Sloan did not at any time claim; that Sloan, in consideration of such indebtedness, conveyed the land and lots to him, in payment of his said indebtedness, which amount was the full value of said lands, after deducting the amount paid by him to Yandes from the value of such lands; that all of such property has been sold to third persons, without any notice to them of the claims of the plaintiffs. He denies all fraud, and claims that he was an innocent purchaser from Yandes in good faith; and he also denies that Sloan furnished the consideration paid by him to Yandes for the real estate.

Sloan and Yandes answered by a general denial of the allegations of the complaint. The plaintiffs replied by general denial to second paragraph of the answer of Sewell.

There was a trial by jury, and a general verdict for the defendants, and special findings as follows, in answer to interrogatories submitted by the plaintiffs:

1. Did the plaintiffs, Frederick Parmlee and Edward Parmlee, on the 28th day of November, 1853, recover the judgment

against Joseph L. Sloan, the defendant, as set forth in the complaint?   Answer. Yes.

2. How much remains due to the said Federick and Edward Parmlee on said judgment at this time, including the principal and interest?   Answer. Two hundred and five dollars and seventy-one cents.

3. When was the indebtedness, upon which said judgment was rendered, contracted?   Answer. October, 1851.

4. Did the said John Hibbs, at the May term of the Fountain Common Pleas Court for 1864, recover the judgment as set forth in the plaintiffs' complaint?   Answer. Yes.

5. What remains due to said Hibbs for principal and interest to this date?   Answer. One thousand one hundred and thirty-eight dollars and seventeen cents.

6. When was the indebtedness, upon which said judgment was rendered, contracted?   Answer. December 14th, 1857.

7. Did the plaintiff, Alvah Buckingham, at the January term of the common pleas court of Fountain county, for the year 1865, recover the judgment against Joseph L. Sloan, as set forth in plaintiffs' complaint?   Answer. Yes.

8. What amount remains due said plaintiff on said judgment for principal, interest, and costs at this date?   Answer. Nine thousand three hundred and forty-one dollars and fifty cents.

9. When was the indebtedness contracted, upon which said judgment was rendered?   Answer. May 31st, 1854.

10. Did the plaintiff, Joseph Campbell, at the May term of the common pleas court of Fountain county for the year 1864, recover the judgment against the defendant, Sloan, as set forth in the plaintiffs' complaint?   Answer. Yes.

11. What amount remains due the plaintiff for principal, interest, and costs at this date?   Answer. Three hundred and fifty-three dollars and forty-seven cents.

12. When was the indebtedness contracted, upon which said judgment was rendered?   Answer. January 29th, 1853.

13. Did the plaintiff, Isaac Orahood, at the May term of the Fountain Common Pleas Court for 1864, recover a judg-

ment against the defendant, Sloan, as set forth in the plaintiffs' complaint. Answer. Yes.

14. What amount remains due for principal and interest to the plaintiff at this date on said judgment? Answer. Three hundred and seventy-five dollars and twenty-two cents.

15. State when the indebtedness accrued, upon which said judgment was rendered. Answer. May 20th, 1855.

16. Did the State of Indiana, on the relation of William Lamb, auditor of Fountain county, recover a judgment, at the May term of the Fountain Circuit Court for the year 1852, against the defendant, Sloan, as set forth in the plaintiffs' complaint? Answer. Yes.

17. What amount remains due for principal and interest to the plaintiff at this date? Answer. Nine hundred and sixty-seven dollars and twenty-eight cents.

18. When was the indebtedness contracted, upon which the judgment was rendered? Answer. April, 1843.

22. Did William Martin, plaintiff, at the May term of the Fountain Common Pleas Court for 1864, recover the judgment against Joseph L. Sloan, as set forth in the plaintiffs' complaint? Answer. Yes.

23. When was the indebtedness, upon which such judgment was rendered, contracted, and what amount is now due? Answer. November 9th, 1853, and now due eight hundred and forty-nine dollars and sixteen cents.

24. Did the plaintiffs, Peter A. White and William Sheom, at the May term of the Fountain Circuit Court for 1853, recover the judgment against the defendant, Joseph L. Sloan, as set forth in the plaintiffs' complaint? Answer. Yes.

25. How much remains due to the said White and Sheom on said judgment at this date, including principal and interest? Answer. Three thousand seven hundred and seven dollars and fifty-one cents.

26. When was the indebtedness upon which said judgment was rendered contracted? Answer. November 5th, 1850.

27. Did Peter Neff, William Neff, and Peter R. Neff, at

the May term of the Fountain Common Pleas Court for 1864, recover the judgment against the defendant, Joseph L. Sloan, as set forth in plaintiffs' complaint? Answer. Yes.

28. How much remains due the said Peter Neff, William Neff, and Peter R. Neff, at this date, on said judgment, including principal and interest? Answer. One thousand ninety-seven dollars and forty-five cents.

29. When was the indebtedness upon which such judgment was rendered contracted? Answer. January 25th, 1856.

30. Did the plaintiff, James Graham, at the April term of the Fountain Common Pleas Court for 1864, recover the judgment against the defendant, Joseph L. Sloan, as set forth in the plaintiffs' complaint? Answer. Yes.

31. How much remains due the said James Graham on said judgment at this date, including principal and interest? Answer. One thousand fourteen dollars and twenty-five cents.

32. When was the indebtedness upon which said judgment was rendered contracted? Answer. Four hundred and eight dollars, April 28th, 185—; seven hundred dollars, August 24th, 1848.

33. Did the said Nicholas Graham, John L. Patterson, and Flavius J. Phillips recover the judgment against the defendant, Joseph L. Sloan, in the United States Circuit Court for the district of Indiana, as set forth in the plaintiffs' complaint? Answer. Yes.

34. Did the said John R. Neff, Kirkbridge Yardly, and William R. Neff recover the judgment against the said Joseph L. Sloan in the United States Circuit Court for the district of Indiana, as set forth in the plaintiffs' complaint? (No answer.)

35. Did the marshal of the United States Circuit Court for the district of Indiana sell, under execution issued upon the judgments referred to in the two preceding questions, and as set forth in the complaint of plaintiffs, the property of defendant Sloan, described in the complaint, and alleged to

have been so sold by him on the 5th day of September, 1854? Answer. Yes.

36. For what amount did said property sell at said marshal's sale? Answer. One thousand six hundred and one dollars.

37. Who was the purchaser at said marshal's sale? Answer. D. Yandes.

38. What was the value of the said property so sold at marshal's sale at the time the same was sold? Answer. Thirteen thousand six hundred and fifty dollars.

39. Did Joseph L. Sloan and wife, on the thirteenth day of September, 1854, execute to Daniel Yandes a deed in fee simple for the lands so sold at the said marshal's sale on the 5th day of September, 1854? Answer. Yes.

40. What is the consideration expressed in said last named deed? Answer. One hundred dollars.

41. What was the real consideration of said deed from Sloan and wife to Yandes? Answer. Nothing.

42. Did the defendant, Joseph L. Sloan, remain in the possession, occupancy, and ostensible ownership of said lands so sold at marshal's sale, receiving the rents, issues, and profits thereof for his own benefit and use, from the date of said sale up to the 30th day of June, 1859, with the exception of so much thereof as was sold during the time intervening from the date of said sale to the said 30th day of June, 1859, by David Rawles, agent and attorney in fact for said Daniel Yandes? Answer. In possession, but not receiving all the rents.

43. What amount was realized by Daniel Yandes from the sale of said lands purchased by him at said marshal's sale, up to the 30th day of June, 1859? Answer. Eleven thousand five hundred and twenty-five dollars.

44. Did said Yandes appropriate the means realized by him from the sales of said lands purchased by him at marshal's sale, or any part thereof, for the benefit of defendant Sloan; and if so, for what amount, and for what purpose? Answer. No.

45. Did said Daniel Yandes appropriate the balance of the moneys realized by him from his sales of said lands purchased by him at said marshal's sale, to the payment of his own advances and expenses, together with interest thereon; or in what way did he appropriate it? Answer. Yes.

46. Has the defendant, Joseph L. Sloan, occupied, controlled, and been in possession of the said sixty acres off the west side of the south-west quarter of section 36, town 20, range 9, west, sold at the said marshal's sale and purchased by said Yandes, from the date of said marshal's sale to the present time? Answer. No.

47. What improvements has the defendant, Sloan, placed upon said last named tract of land since the date of said marshal's sale, and what is the value thereof? Answer. House, worth twelve hundred dollars.

48. Was it understood or agreed by and between defendants, Sloan, and said Daniel Yandes, at the time of the said marshal's sale, or at the date of the deed by Sloan and wife to said Daniel Yandes, on the said 5th day of September, 1854, that the said lands then purchased at said sale by said Yandes were to be held by said Yandes, in trust for the benefit of said Sloan, or his wife or children, subject to the payment of the judgments upon which said lands were sold, and the charges, expenses, and outlays of said Yandes, together with ten per cent. interest thereon, and all prior liens? Answer. No.

49. Did Daniel Yandes, on the 30th day of June, 1859, convey to William C. B. Sewell, defendant, the lands so purchased by him at marshal's sale, and so conveyed by Sloan and wife to said Yandes, except those sold by Rawles as his agent, and except, also, the sixty acres off the west side of the south-west quarter of section 36, town 20, range 9? Answer. Yes.

50. What was the value of the property so conveyed at that time? Answer. Four thousand and forty-seven dollars.

51. What notes, judgments, and other securities did Yandes, at or about the time he conveyed said lands to Sewell, as-

sign to said Sewell, which were the proceeds of the sales of the lands of said Sloan, so purchased by Yandes at said marshal's sale? Answer. Judgments and notes to the amount of three thousand seven hundred dollars, or thereabout; no names or number recollected.

52. What consideration did Sewell give for the conveyance of said lands and the assignment of said notes, judgments, and other securities to Sewell? Answer. Three thousand one hundred and eighteen dollars.

53. Was the defendant, Sloan, in possession of the property in controversy, appropriating the rents and profits to his own use, when Sewell received his conveyance from Yandes? Answer. In possession, but not receiving all the rents.

54. Did Sewell, at the time, know of such possession? Answer. Yes.

55. Has Sloan, ever since the execution of said deed from Yandes to Sewell, continued to possess and control the property thereby conveyed, and also the sixty acres off the west side of the south-west quarter of said section 36, town 20, range 9? Answer. No.

56. Did Sewell receive the deed from Yandes, with an understanding or agreement with Yandes that he, Sewell, should hold the property so conveyed by Yandes to him, in trust for Sloan or his family? Answer. No.

57. Did Sewell receive the deed from Yandes in pursuance of a corrupt agreement or understanding between him and Sloan to secure the said property thereby conveyed in the hands of Sewell, so that the same could not be reached by the then existing creditors of Sloan? Answer. No.

58. Was the deed executed by Sloan and wife to Sewell, dated the 13th of March, 1852, whereby they conveyed to Sewell sixty acres off the west side of the south-west quarter of section 36, town 20, range 9, executed by Sloan and received by Sewell with the purpose and object of secreting the property therein described, so that the same could not be reached by execution, and thereby to defraud the creditors of Sloan? Answer. No.

59. Was the deed executed by defendant Sloan to the defendant, Sewell, dated August 2d, 1864, whereby he conveyed to Sewell the lands therein described, executed in pursuance of a preconcerted design or agreement between Sloan and Sewell, to secrete said lands, so that the same could not be subjected to the debts of the plaintiff, and to hinder them in the collection of their debts? Answer. No.

The following interrogatories were propounded to, and answered by, the jury at the instance of the defendant Sewell:

1. Did Joseph Sloan, at or before the marshal's sale of his property, September 5th, 1854, induce any person not to bid at such sale, by promises of reward to them, or by other means? Answer. Did not.

2. Did Daniel Yandes know at the time of such sale and purchase by himself that any person or persons had been induced not to bid at such sale by said defendant Sloan? Answer. No.

3. Did William C. B. Sewell, defendant, know, at the time of the conveyance by Yandes to him, June 30th, 1854, that defendant Sloan had, by any means, induced persons not to bid on his property at the marshal's sale of the same, September 5th, 1854? Answer. No.

4. Was there any agreement whatever between Joseph L. Sloan and Daniel Yandes at or before the marshal's sale of Sloan's property of September 5th, 1854, regarding said property then sold; and, if so, what were the terms of such agreement? Answer. No.

5. Was there any agreement between Joseph L. Sloan and Daniel Yandes at or before the marshal's sale of Sloan's property, September 5th, 1854, that the said Daniel Yandes was to hold the surplus of the property remaining after reimbursing himself, for the use and benefit of Sloan, and to be accounted for by said Yandes to said Sloan? Answer. No.

6. Had defendant Sewell, at the time of the sale and conveyance by Yandes to him, June 30th, 1859, any notice that Yandes then held said property in trust for Joseph L. Sloan under any agreement whatever? Answer. No.

7. Did Joseph L. Sloan furnish any part of the consideration paid by Sewell to Yandes for said property? Answer. No.

8. Did defendant Sewell receive and accept such conveyance from Yandes under an agreement with either Sloan or Yandes to hold the same in trust for, or for the use of Sloan? Answer. No.

9. What was about the cash value of the real estate of Joseph L. Sloan sold at marshal's sale, September 5th, 1854, and to which the wife of Sloan afterward relinquished her right of dower? Answer. Thirteen thousand six hundred and fifty dollars.

10. What was about its cash value at that time, subject to the right of dower of Mary Jane Sloan, then the wife of Joseph L. Sloan? Answer. Nine thousand one hundred dollars.

11. What amount was paid by David Rawles from proceeds of sales of the Sloan property to Daniel Yandes, up to June 30th, 1859? Answer. Eleven thousand five hundred and twenty-five dollars.

12. What amount was paid by defendant Sewell for the conveyance made by Yandes to him, said Sewell, June 30th, 1859? Answer. Three thousand one hundred and eighteen dollars.

13. About what amount was Sloan indebted to Sewell on the 2d of August, 1864, when the quitclaim deed was made by Sloan to Sewell of the lands and lots in controversy? Answer. Seven thousand four hundred and seventy-seven dollars and ninety-two cents.

14. Was there any combination and confederation between Sloan and Yandes at or before the marshal's sale, September 5th, 1854, to cheat and defraud the creditors of Sloan, the plaintiffs in this suit? Answer. No.

15. Did Sewell, the defendant, at or before the date of his purchase from Yandes, know of any combination between Yandes and Sloan to cheat and defraud any of the creditors of Sloan? Answer. No.

16. Did Sloan, Yandes, and Sewell combine and confederate together at or before the marshal's sale, September 5th, 1854, or at any other time, to cheat and defraud any of the creditors of Sloan? Answer. No.

17. Was there any agreement in writing between Sewell and Sloan or Sewell and Yandes of the terms of any trust regarding said property? Answer. No.

18. What amount was paid by defendant Sewell for the sixty-acre tract of land in section 36, sold by Sloan to Sewell? Answer. One thousand eight hundred dollars.

19. What was the date of the deed made by Sloan and wife to Sewell for that tract of land? Answer. March 13th, 1852.

20. What was the date of the recording of same deed? Answer. April 22d, 1852.

21. What was the date of the purchase of the same land by Sewell at the sinking fund sale of lands in 1852? and what was the date of the mortgage on which the same was sold to Sewell? Answer. Date of purchase, 1852; date of mortgage, 1844.

A new trial was asked by the appellants for the following reasons: first, because the court permitted the jury, after they agreed upon their verdict, to separate, and meet, and deliver their verdict at the meeting of the court the next morning; second, the court misdirected the jury in its charges given at the instance of the defendants, and improperly refused and modified those asked by the plaintiffs; third, the verdict of the jury is contrary to law; fourth, the verdict of the jury is contrary to the evidence; fifth, the improper admission of the deed from Sloan and wife to Sewell as evidence for the defendants.

This motion was overruled, and judgment rendered. The evidence and instructions are in the record by bill of exceptions.

The only error properly assigned is, that the court wrongfully refused to grant a new trial.

With reference to the first point, the facts are that the

Parmlee *et al. v.* Sloan *et al.*

jury was sent out to consult of their verdict at about four o'clock on Saturday afternoon of the first week of the term. After waiting for them to agree until eleven or twelve o'clock at night, the judge sent to the jury, by their bailiff, written directions, that when they agreed upon a verdict, they should seal it up, and leave it in the care of the foreman; that they should not communicate to any one what verdict they had agreed on, and meet in court on Monday morning. This note to the jury was written at the hotel where the judge was boarding, in the presence of counsel for the defendants and one of the counsel for the plaintiffs, was read aloud, and sent off to the jury without any objection from the counsel of the plaintiffs, who was present, and with the understanding on the part of the judge that he was assenting to the arrangement. The jury agreed on their verdict at about half past two o'clock on Sunday morning, sealed up their verdict, separated, and on Monday morning, at the meeting of the court, were present and delivered their verdict in open court. We think that if it was necessary to have the consent of counsel to authorize the court to permit the jury thus to separate, we ought to infer the assent of counsel thereto. See on the subject of separation of the jury by order of the court. *Harter* v. *Seaman*, 3 Blackf. 27; *Bosley* v. *Farquar*, 2 Blackf. 61, and note 3.

The first instruction to which exception was taken, and which is referred to in the brief of counsel, is as follows: "That secret intentions of parties, or declarations of intention and purposes of such parties to strangers or others, cannot be enforced as duties or obligations, or become the subject-matter of legal or equitable judicial investigation."

Mr. Yandes denied most positively in his testimony that there was any agreement by which he was to hold the land, or the overplus after reimbursing himself, for the benefit of Sloan. But, if it could be done, he intended to save something for Sewell, to whom Sloan was indebted.

If the proposition contained in this charge was intended to

apply to that testimony, and to inform the jury that such mere intentions on the part of Yandes, whether they remained secret or were declared to strangers or others, could not be legally recognized as circumstances affecting the case, we see no objection to it. If it was not intended to meet that view of the case, we do not see that it had any application to the case. Mere intentions unexecuted do not constitute either a contract, a tort, or a crime, and in this view they are not the subjects of legal or equitable judicial investigation.

The second instruction to which our attention is called is as follows:  "To establish a resulting trust in lands in favor of creditors, the terms of the agreement must be clearly and satisfactorily shown, and parol evidence to establish the same, in opposition to the terms of a written conveyance, should be received with caution in all cases in which such evidence is admissible."

The deed to Yandes from the United States marshal and also the deed from Sloan and wife to him were absolute on the face of them; but it was alleged, and sought to be shown by the plaintiffs, that there was a contract or agreement between Yandes and Sloan, by which Yandes was to hold the lands in trust for Sloan, or to pay to him any overplus which might remain after the repayment to Yandes of the amounts for which he was liable as the surety of Sloan, etc. We think it was proper for the court to say to the jury that the terms of the agreement thus alleged must be clearly and satisfactorily shown, and that parol evidence to establish the same should be received with caution. Such, in effect, is the rule recognized in the following cases: *Fausler* v. *Jones*, 7 Ind. 277; *Blair* v. *Bass*, 4 Blackf. 539. The right to prove a trust by parol is exceptional. The general rule is, that trusts concerning lands must be created in writing, signed by the party creating the same, or by his attorney authorized in writing. 1 G. & H. 651, sec. 1. There is an exception to this rule of such trusts as arise by implication of law. Hence the admissibility of parol evidence to show such a trust. See *Irwin* v. *Ivers*, 7 Ind. 308.

The third charge objected to by the appellants is this: "That if the jury believed from the evidence that such arrangement was made between Yandes and Sloan before or at the marshal's sale of Sloan's property on the 5th of September, 1854, as is set forth in plaintiffs' complaint, still Sewell cannot be bound or affected by it, unless the jury also believe from the evidence that Sewell had knowledge of, or notice of, such agreement, at or before the conveyance to him by Yandes."

This charge was correct. Sewell could not be affected by a trust of which he had no notice. But as the jury so fully settled the question by their findings that there was no such agreement between Yandes and Sloan, it would seem to be immaterial whether this charge was correct or not.

The fourth instruction is as follows: "If the jury believe from the evidence that the deed of Sloan and wife to Daniel Yandes, of September 13th, 1854, and the two marshal's deeds to Yandes, were duly recorded before the conveyance by Yandes to Sewell, June 30th, 1859, the possession or occupation by Sloan of a part of the property thus conveyed to Yandes would not be constructive notice to Sewell of a trust in Yandes for the use and benefit of Sloan, even if they should find from the evidence, that such agreement between Sloan and Yandes to hold in trust, as is set forth in the plaintiffs' complaint, was proved."

As the jury found that there was no trust as between Yandes and Sloan, the possession of the land or part of it by Sloan could not be notice to Sewell, or to any one else, of such a trust. The charge was inapplicable to the facts as found by the jury, and could have done the plaintiff no harm, conceding that it was incorrect. But we need not decide whether it was or was not correct.

The fifth reason assigned for a new trial is, that the court improperly admitted the deed from Sloan and wife to Sewell for the sixty acres of land in section 36, dated March 13th, 1852.

As we understand the facts of the case, this deed was not

for any of the lands involved in the controversy in this case. If so, then it was only immaterial, and its admission cannot affect a judgment which is correctly rendered upon the material evidence in the case.

The remaining reasons for a new trial are, that the verdict is contrary to law and to the evidence. The evidence fully justified the verdict of the jury, and we have gone to the trouble of setting out the numerous interrogatories submitted by the parties to the jury, and their answers thereto, in order to show how almost every material allegation of the complaint is negatived by the findings of the jury.

On another trial of this case before that which resulted in the verdict which we have set out, there was a general verdict for the defendants, and the court, without reason, and perhaps improperly, granted a new trial as a matter of right. We think that there is no good reason for further litigating the matters involved.

The judgment is affirmed, with costs.*

*J. Ristine, J. W. Nichol, Z. Baird,* and *T. F. Davidson,* for appellants.

*W. H. Mallory* and *J. M. Butler,* for appellees.

*Petition for a rehearing overruled.