## BULLERDICK ET AL. *v.* MILLER ET AL.

[No. 12,458. Filed June 11, 1926. Rehearing denied December 8, 1926.]

1. TRUSTS.—*In order to establish a resulting trust under the statute the parties, without any fraudulent intent, must have made an agreement of the kind indicated therein, which agreement must have been made before title to the real estate was acquired, must have been fair and supported by a valuable consideration, the proof must be clear and unequivocal and the transaction free from fraud.*—In order to establish a resulting trust under the third clause of §13449 Burns 1926, §4019 Burns 1914, the following elements are essential: (1) The parties, without any fraudulent intent, must have made an agreement of the kind indicated therein; (2) the agreement must have been made before the title was acquired; (3) there must have been a valuable consideration for the agreement; (4) the transaction must be free from fraud; (5) the proof must be clear and unequivocal; (6) the agreement must be fair. p. 376.

2. TRUSTS.—Although a resulting trust in land may be established by parol evidence, such evidence must be clear, strong, and unmistakable, and must establish payment by the alleged beneficiary beyond a doubt. p. 378.

3. TRUSTS.—*The fact that sons turned their wages over to their mother after they reached age of twenty-one and that she used*

*same to pay off a purchase money mortgage under an agreement that she was to hold the land in trust for them would not establish such trust.*—Since a resulting trust in land under the third clause of §13449 Burns 1926, §4019 Burns 1914, can only arise from the circumstances at the time the conveyance is made to the alleged trustee, the fact that sons turned their wages over to their mother after they reached the age of twenty-one and she used such wages to pay off a purchase money mortgage would not establish such trust (*Rickes* v. *Rickes*, 81 Ind. App. 533, distinguished). p. 381.

4.  TRUSTS.—Evidence *held* not to sustain a finding that land conveyed to a mother was paid for by money advanced by her sons so as to create a resulting trust under §13449 Burns 1926, §4019 Burns 1914. p. 381.

5.  TRUSTS.—*To establish a resulting trust in land conveyed to a mother and paid for by her sons, they must allege and prove that conveyance to mother was without any fraudulent intent.*— In order to establish a resulting trust under §13449 Burns 1926, §4019 Burns 1914, in land conveyed to a mother and paid for by her sons, they must allege and prove that the conveyance was made to the mother without any fraudulent intent. p. 382.

6.  TRUSTS.—*That sons gave their wages to their mother after they became twenty-one would not relate back to the time she purchased land under an agreement to hold it in trust for them so as to create a resulting trust under the statute.*—The fact that sons gave some or all of their wages to their mother after they became twenty-one would not relate back to the time of her purchasing land under an agreement to hold it in trust for them so as to establish a resulting trust under §13449 Burns 1926, §4019 Burns 1914. p. 383.

From Clay Circuit Court; *Thomas W. Hutchinson,* Judge.

Action by William Miller and others against Margaret Miller Bullerdick and another. From a judgment for plaintiffs, the defendants appeal. *Reversed.* By the court in banc.

*Henry W. Moore,* for appellants.
*B. C. Craig,* for appellees.

McMAHAN, P. J.—This action was commenced in August, 1924, by William, Frederick and Conrad Miller against their sister, Margaret Miller Bullerdick, and

Elizabeth Miller, their mother, and involves the owner-ship of eighty acres of land in Clay county. The cause was tried on the second paragraph of complaint, which alleges that in 1902, at a time when the plaintiffs were all under the age of twenty-one, they, having been emancipated by their parents, entered into an agreement with their mother by virtue of which they were to turn all money earned by them over to her for the purpose of purchasing the real estate involved in this appeal and that she should take the title to such land in her name, and hold it in trust for the said plaintiffs subject to a life estate in herself; that, pursuant to such agreement, their mother, in 1902, purchased such real estate, paying for the same with the money of plaintiffs; that, pursuant to said agreement, their mother took the title to said land in her name to hold in trust; that plaintiffs turned their earnings over to their mother until the land was fully paid for; that in 1924, the mother conveyed said land to their sister, Mrs. Bullerdick, who at the time knew her mother was holding the land in trust for plaintiffs. The prayer was that a trust be declared in the land in favor of the plaintiffs, and that the deed to Mrs. Bullerdick be set aside. The issues were closed by a general denial. Before the commencement of the trial, which was on December 26, 1924, Conrad Miller, on leave of court, dismissed the cause in so far as he was concerned. The court found the deed to Mrs. Bullerdick should be set aside and declared void, that the mother, Elizabeth Miller, is the owner of a life estate in the land and that the three sons, William, Frederick and Conrad Miller are the owners of the remainder in said land after the death of their mother, each of them being the owner of an undivided one-third of such remainder. A decree was rendered accordingly. Appellants' motion for a new trial was overruled; hence this appeal. Conrad Miller has filed

a confession of errors, and is making no claim to any interest in the land.  Appellants contend that the decision is not sustained by the evidence and that it is contrary to law.

The facts as disclosed by the undisputed evidence are, in substance, as follows:    Elizabeth Miller and her husband, Frederick Miller, came from Germany in the early 80's, and located in Clay county, Indiana.   They raised a family of seven children, four girls and three boys. Appellee Frederick and the oldest girl were born in Germany.   All the other children were born in Clay county.   The father was a coal miner.   Each of the boys when about fourteen years old began working in the mines and followed that occupation for many years. When the real estate involved was purchased, the father and the three boys were all working in the mines.   The family at that time consisted of the parents and six children, the oldest daughter having been married before that time.   The three boys were then all less than twenty-one years old.   Frederick was twenty, William nineteen, and Conrad seventeen.   It was a frugal and industrious family.   The father, and the boys until they were twenty-one, as they received their pay, gave their money to the mother, who, as is frequently the case in families of that kind, looked after the business and financial affairs of the family.   They lived in rented property until after they purchased the land in question, in March, 1902.   The parents, in the presence of their children, had for a number of years talked about buying a home.   The father was satisfied with renting. The mother was not.   She wanted a place where they could raise some of the necessities of life.   At one time, they agreed to buy a place in a small village, and after making five monthly payments of $5 each, they abandoned that purchase and lost the $25.   (According to the testimony of the mother, this was when they were

living on what is known as the Elliott place, and about ten years before they purchased the land in controversy, which is an eighty-acre farm, and for which they paid $2,000 in cash.)    In March, 1902, the mother had on deposit in bank $900, which she had saved out of the wages of the father and boys.    Mrs. Miller and her husband borrowed $1,100 and gave their note therefor, due April 1, 1903, and mortgaged the land to secure its payment.    The $900 in bank and the $1,100 so borrowed were used in paying for the farm, and made up the whole of the purchase price of the land.    They took pos-session of the farm, and after doing some plowing, built a house and barn, and did some fencing, and on December 26, 1902, moved onto the farm.    When the land was purchased, it was conveyed to the mother by a warranty deed.    In 1915, she and her husband conveyed the land to a trustee, who immediately thereafter conveyed the same to appellant Elizabeth Miller and her husband by the entireties.    Frederick Miller, the father, died in April, 1924, and a few days later, Mrs. Miller conveyed the land to her daughter Margaret, who is one of the appellants.    Payments were made on the $1,100 note as follows:    April 1, 1903, $66 interest and $200 princi-pal; October 3, 1903, $160; April 16, 1904, interest to date and $40 on principal; April 12, 1905, $242; April 23, 1906, $30 interest and $100 principal; April 1, 1907, $150.    The balance due on the note was paid sometime in 1907.    None of these payments were made by the boys.

With these undisputed facts before us, we will now review the evidence on which appellees rely to estab-lish the trust.    William Miller testified, in substance, as follows:

"I am 42 years old; worked in the mine until last three years; remained at home until I was nearly twenty-four years old; around twenty years old when

farm was purchased; father and mother told us boys they wanted to buy a home; they said if we boys would stay with them and put our money toward buying a home, they would be willing to do so, and if we would stay with them and help them, the place would belong to the boys. We told them to go ahead and locate a place and we would stay with them and furnish our money toward a home. The first place they found they paid $25 on it and then let it go back. This was while we lived on the Kahn place. I stayed home about four years after the farm was purchased. I turned my pay envelop over to my mother just the same as my father and brothers did. This continued after I was twenty-one the same as before. Mother said the money would help pay for the place and it would belong to the boys. She said they had earned it and paid for it. After this I turned practically all I earned over to her after I was twenty-one. I cannot say how much I turned over except for one year, and I don't know whether this was before or after I was twenty-one. That year I turned over $1,002.92. After the land was purchased, mother said in the presence of my sister Margaret, that the place belonged to the boys, that they had worked for it and paid for it." On cross-examination, he said the conversation about buying the farm took place in the fall of 1901; that the folks had $900 on hand; that they said that would not buy it and that they would have to borrow $1,100; that his mother said the deed would be made to her and "heirs" and that "heirs" meant the boys; there was no other conversation until after the deed was made.

Frederick Miller, the oldest son, testified that he was at home when the land was bought; never had any conversation with his father or mother about buying the land; was in the mine the biggest part of the time; turned all of his money over to his mother; heard them

talk; they were aiming to buy a piece of land and heard about the eighty acres; they said if the boys stayed with them it would fall to the boys; do not know whether the conversation was before or after the land was bought.

Lena Sanders, a sister of appellees, testifying as a witness for them said: She was between thirteen and fourteen years old when the land was purchased; before the land was purchased, her mother said they were going to buy an eighty-acre tract of land and the "boys were to stay with them and pay for the place and the place would belong to the boys * * * and it would belong to the boys providing they paid for it"; the fall before she was married, she had another conversation with her mother in which her mother said the "land would belong to her and the heirs," and that "heirs" meant the boys.

Another sister testified that the mother told her "She and the boys had bought it"; this was a short time after the place was bought.

Henry Kahn was a witness for appellees. He testified that he and appellees' father worked together in the mines as "partners"; that on an occasion when they were dividing their earnings, about a year after the land was purchased, Mr. Miller said "their share of the money would go as a payment on the farm, and he also said it was for the boys and the rest of the children, * * * This money goes as a payment on the farm, and the farm goes to all the children."

The mother testified she never had any conversation with any of the boys about buying the land and that there was no agreement with them concerning the purchase of the land or how the title should be held; that the boys turned all their wages over to her up to the time they were twenty-one; that after they became twenty-one, they each paid her $5 a week for board and kept the balance themselves.

The statutory provisions in this state concerning trusts in lands, in so far as they are applicable to the instant case, are as follows: "No trust concerning lands, except such as may arise by implication of law, shall be created, unless in writing, signed by the party creating the same, or by his attorney thereto lawfully authorized in writing." §13442 Burns 1926, 1 R. S. 1852 p. 501. "When a conveyance for a valuable consideration is made to one person, and the consideration therefor is paid by another, no use or trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two sections." §13447 Burns 1926, 1 R. S. 1852 p. 501. The next succeeding section is not applicable to this case and is not set out. The second succeeding section is as follows:

"The provisions of the section next before the last shall not extend to cases where the alienee shall have taken an absolute conveyance in his own name without the consent of the person with whose money the consideration was paid; or where such alienee, in violation of some trust, shall have purchased the land with moneys not his own; or where it shall be made to appear that, by agreement, and without any fraudulent intent, the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land or some interest therein in trust for the party paying the purchase-money or some part thereof." §13449 Burns 1926.

If any trust was created in the land involved in this action, it is because the facts bring it within the third clause of said §13449 Burns 1926. In order to

1. establish a trust under this clause, the following elements are essential: (1) The parties, without any fraudulent intent, must have made an agreement of the kind indicated therein; (2) the agreement must have been made before the title to the real estate

was acquired; (3) there must have been a valuable consideration for the agreement; (4) the transaction must be free from fraud; (5) the proof must be clear and unequivocal; (6) the agreement must be fair. *Koehler* v. *Koehler* (1919), 75 Ind. App. 510, 121 N. E. 450.

The trust in the instant case, if it arose at all, arose at the time the conveyance was made to Mrs. Miller in 1902. *Westerfield* v. *Kimmer* (1882), 82 Ind. 365; *Hutton* v. *Cunningham* (1901), 28 Ind. App. 295, 61 N. E. 1138, 62 N. E. 644. As was said in *Hughes* v. *White* (1889), 117 Ind. 470, 473, 20 N. E. 157: "The trust arises at the inception of the title, and must depend upon the transaction as it occurred up to that time, and it cannot be changed by any subsequent transaction, except as such subsequent transaction may throw light upon the original."

The rule is thus stated in *Ducie* v. *Ford* (1891), 138 U. S. 587, 34 L. Ed. 1091, 1095: "While there is no doubt of the general proposition that a trust results to him who pays the consideration for an estate, where the title is taken in the name of another; that such trust is not within the statute, and that parol evidence is admissible to show whose money is actually paid for the property; it is equally clear that the trust must have arisen at the time the purchase was made, and that the whole consideration must have been paid or secured at the time of or prior to such purchase."

And the same court in *Olcott* v. *Bynum* (1872), 84 U. S. 44, 21 L. Ed. 570, said: "Such trust must arise, if at all, at the time the purchase is made. The funds must then be advanced and invested. It cannot be created by after-advances or funds subsequently furnished." "The payment of the purchase money is the foundation of the trust." *Dorsey* v. *Clarke* (1819), 4 Har. & J. (Md.) 551; *Dixon* v. *Dixon* (1914), 123 Md. 44, 90 Atl.

846, Ann. Cas. 1915D 616. "Payment or advance of the purchase money by the party claiming the trust, before or at the time of the purchase, is indispensable." *Hays* v. *Hollis* (1849), 8 Gill (Md.) 357. And, as said in *Keller* v. *Keller* (1876), 45 Md. 269: "It is held in all cases that the payment which is the foundation of the trust, must be made out by plain, direct, and unequivocal evidence."

In *Toney* v. *Wendling* (1894), 138 Ind. 228, 37 N. E. 598, the appellant claimed that her husband in his lifetime used certain moneys belonging to her in buying the real estate there involved, taking title in himself, and, by way of a cross-complaint in an action for partition, sought to have a trust in the land established in her favor. It was there said: "An implied trust is a mere creature of equity, founded upon presumptive intention and designed to carry that intention into effect—not to defeat it. If it is not the intention that the estate shall vest in him who pays the purchase-price, then no resulting trust in his favor attaches to the property. The trust can only arise from the original transaction at the time it takes place, and at no other time. The funds must be advanced and invested at the time the purchase is made. A resulting trust cannot be created by funds subsequently furnished." To the same effect see *Scott* v. *Dilley* (1913), 53 Ind. App. 100, 101 N. E. 313; *People's, etc., Trust Co., Exr.,* v. *Mills* (1923), 193 Ind. 131, 139 N. E. 145. In the case last cited, it is said: "A resulting trust in land must arise, if at all, at the time title vests in the trustee, and cannot be created by subsequent agreement, nor by a subsequent use of trust funds to pay installments of the purchase money."

While a resulting trust may be established by parol evidence: "It is settled by a complete unanimity 2. of decisions that such evidence must be clear, strong, unequivocal, unmistakable, and must es-

tablish the fact of the payment by the alleged beneficiary beyond a doubt." 3 Pomeroy, Equity Jurisprudence (4th ed.) §1040.

If it be claimed that appellees William and Frederick remained at home after they reached the age of twenty-one, and thereafter turned their wages over to their mother and that she used the money so turned over in paying off the $1,100 note, the contention may be answered in the words of the court in *Keith* v. *Miller* (1898), 174 Ill. 64, 51 N. E. 151: "This cannot affect the question, as the trust must result, if at all, at the instant the deed is taken and the title vests in the grantee. Perry on Trusts (sec. 133) says: 'No oral agreements and no payments, before or after the title is taken, will create a resulting trust, unless the transaction is such, at the moment the title passes, that a trust will result from the transaction itself.'"

"A resulting trust," said the court in *Krauth* v. *Thiele* (1889), 45 N. J. Eq. 407, 18 Atl. 351, "arises by operation of law from the contemporaneous circumstances which give the legal and equitable titles different directions. It must, therefore, arise at the instant the deed is taken and the legal title vested in the grantee, and the situation of the transaction when the title passes is to be looked to, and not the situation preceding or following that time."

In *Tilford* v. *Torrey* (1875), 53 Ala. 120, the court observed: "To create the equity either to charge the lands, or to raise a resulting trust, a payment of the trust funds at the time of the purchase is indispensable. A subsequent payment by the trustee of the debt he may have contracted in the purchase of the lands, will not by relation attach any trust or lien to the original purchase. The whole theory of a resulting trust, or of the equity of the *cestue que trust* to follow trust funds into real estate or other property, arises out of the cir-

cumstance, that the trust funds, at the time of the purchase, formed its consideration."

Appellees cite and rely upon *Rickes* v. *Rickes* (1923), 81 Ind. App. 533, 141 N. E. 486. In that case, the mother owned certain property for which she paid $900, $700 of the purchase price being secured by a mortgage which appellee afterwards paid. A year later, the appellee purchased a certain lot which he paid for and, without fraudulent intent, had the deed made to his mother. The mother later sold her property for $1,250, $850 of which went to pay commission and to pay the mortgage on the property purchased by the son. In 1904, the son purchased a farm and had it deeded to his mother with no fraudulent intent. He sold the first land bought by him. The money was used in stocking and improving the farm. The house on the farm burned. Appellee collected insurance and with several hundred dollars furnished by him rebuilt the house. In 1914, the mother and father, without the consent of appellee, sold the farm for $15,000 and with the proceeds purchased the real estate involved and took the title in their names by the entireties. The father died, and the son commenced an action to have a trust declared. A decree in his favor was affirmed. The court, in that case, in discussing the evidence showing the son had paid for the property, first held the evidence showed the son had paid the purchase price for the first property bought by him and that a trust resulted in it in his favor. And, in this connection, the court said: "In reaching this conclusion, we have not attached any importance to the fact that said deferred payment of $800 was made from proceeds derived from the sale of appellant's Prospect street property, as a resulting trust must arise, if at all, at the time of the execution of the conveyance. *Toney* v. *Wendling,* (1894), 138 Ind. 228; *Scott* v. *Dilley* (1913), 53 Ind. App. 100. Its existence,

therefore, must be determined from the facts then present, and not from those occurring subsequently. 39 Cyc 128. If the facts in existence at the time appellant acquired title to the Pleasant street property gave rise to a resulting trust therein in appellee's favor, it is clear that the fact, as to the source of the fund from which such deferred payment was made, would not have the effect of dissolving such trust, and thereby deprive appellee of his equitable title to such property."

It must be remembered that, when this land was purchased, the three boys were all under twenty-one years of age. They were living at home with their parents. There was no evidence that any of them was emancipated before he became twenty-one. It follows that all the money earned by them during their minority belonged to their parents. The land was purchased in March, 1902, for $2,000, which was paid in cash. The mother had saved $900 out of the earnings of her husband and children while working in the coal mines. It had taken eight or nine years to do this. She and her husband borrowed $1,100, giving their note and a mortgage on the land and thus paid the full purchase price of the land at the time it was purchased. No part of the purchase money was paid by either of the three boys. Nor is there any claim that any part of the $2,000 was a trust fund. During the summer of 1902, and while the boys were all minors, the parents built a house on the land at a cost of $1,300. Neither of the boys claims to have made any of the payments on the $1,100 note. The clear inference is that this note was paid by the father and mother. We hold there is no evidence to sustain a finding that the land was paid for in whole or in part with trust funds. And as was said in *Collier* v. *Collier* (1868), 30 Ind. 32, 37: "It would be a dangerous innovation of the rules governing this class of cases to allow this finding to stand."

The evidence is not sufficient to sustain the finding for another reason, which we deem of sufficient importance to discuss, although not urged by appellants. The last clause of said §13449 Burns 1926, cast on appellees the burden not only of proving the agreement to hold the land in trust, but also of proving that the mother, without any fraudulent intent, was to hold the land in trust for appellees. As was said in *Barber* v. *Barber* (1896), 146 Ind. 390, 44 N. E. 804, to entitle appellees to recover, it was necessary for them to prove not only an agreement on the part of their mother to hold the land in trust for appellees, "but also that the conveyance was taken in her name without any fraudulent intent." And after calling attention to the allegation in the complaint to the effect that the conveyance was taken in the name of the appellant without any fraudulent intent, the court said: "But there was no evidence given upon this subject. Appellees, therefore, failed to establish any title upon their own theory of the case." See, also, *Reece* v. *Leitch* (1910), 46 Ind. App. 342, 92 N. E. 553, and *Koehler* v. *Koehler, supra.*

And it is to be observed that there is no allegation in the complaint to the effect that there was no fraudulent intent in having the land deeded to the mother, so that, if every allegation of the complaint were proved, the facts would not sustain the decision.

In *Fausler* v. *Jones* (1855), 7 Ind. 277, 280, the court said: "We are not disposed to relax the rule laid down in *Blair* v. *Bass,* 4 Blackf. 539, that parol evidence to establish a resulting trust must be clear, and that it should be received with great caution."

These cases were cited with approval in *Parmlee* v. *Sloan* (1871), 37 Ind. 469, 482, to the proposition that it was proper to instruct a jury that to establish a trust, the terms of the agreement must be clearly and satis-

factorily shown, and parol evidence to establish the same should be received with great caution.

The rule announced in *Blair* v. *Bass* (1838), 4 Blackf. 539, and *Fausler* v. *Jones, supra,* that the proof must be clear and unequivocal was recognized and applied by this court in *Philbin* v. *Carr* (1920), 75 Ind. App. 560, 129 N. E. 19, 27. "To establish a resulting trust by parol testimony, in opposition to the face of a deed, the evidence must be clear and explicit. Facts must also be shown from which a trust resulted at the time the deed was made and the legal title vested in the grantee." *Westerfield* v. *Kimmer, supra; Turner* v. *First Nat. Bank* (1881), 78 Ind. 19.

We again call attention to the fact that when this land was purchased and the conveyance made to the mother, the appellees were all under the age of twenty-one, living at home with their parents, unemancipated, and that all of the purchase price was paid by the parents. True, appellees had worked in the mines, and had turned over to their mother all of the money earned by them before they were twenty-one years old. But the money so earned by them belonged to the parents. There is not a scintilla of evidence that appellees paid any part of the original purchase price of the land. The fact, if it be a fact, that they gave some or all of their wages to their mother after they were twenty-one does not relate back to the time of the purchase so as to create a trust in their favor.

In view of the rule announced by the authorities, we ask,—What trust funds in the hands of Mrs. Miller or her husband were used in paying for the real estate in question? The $900 which Mrs. Miller had on deposit in the bank was not held by her in trust for the three sons. And there is no basis for a claim that the $1,100 borrowed and for which she and her husband gave their note, or that any part of it, belonged to the sons, or

was held in trust for them. It follows that no resulting trust in the land was created at the time of the purchase, and nothing has transpired since the purchase to create a trust.

Appellees cite and rely upon *Koehler* v. *Koehler, supra*. But the facts in that case are radically different from the facts in the instant case. In that case, a trust fund had been created prior to the purchase of the several tracts of land and the land when purchased was paid for out of the trust funds. In the instant case, there was no trust fund in existence when the land was purchased and it was not paid for with trust funds. Here the entire purchase price was paid with funds belonging to the parents.

Judgment reversed, with directions to sustain appellants' motion for a new trial, and for further proceedings consistent with this opinion.