No. 13,394.

## HUGHES ET AL. *v.* WHITE ET AL.

TRUST.—*Real Estate.— Guardian and Ward.*—Where a person purchases real estate, pays one-third of the purchase-money out of funds in his hands as guardian, gives his individual notes secured by mortgage for the balance, and takes the title in his own name, a trust results in favor of the purchaser's wards as to one-third of the real estate, and no more.

SAME.—*Change by Subsequent Transactions.*—A trust in real estate arises at the inception of the title, and depends upon the transaction as it occurred up to that time. It can not be changed by any subsequent transaction, except as such transaction may throw light upon the original.

From the Montgomery Circuit Court.

*J. Wright* and *J. M. Seller,* for appellants.

*B. Crane* and *A. B. Anderson,* for appellees.

OLDS, J.—The facts in this case are: John A. Hughes was appointed guardian of James and Laura B. Richey in 1883. Hughes gave bond as such guardian, with Frank L. Snyder, Martha F. Richey and John C. Maxwell as his sureties.

Hughes, as such guardian, received trust funds belonging to his wards to the amount of $2,727.86. In 1883, Hughes purchased a lot, the premises in controversy in this case, of John S. Brown and William C. White, and paid one-third of the price in cash out of his trust funds, and executed his two promissory notes for the balance, due in one and two years, secured by mortgage on the real estate so purchased. The deed was executed by Brown and White to Hughes, and the mortgage executed by Hughes to Brown and White on the same day. The notes were endorsed for full value by Brown and William C. White to Fannie C. White, before maturity, and she brings this suit to foreclose the mortgage. In May, 1883, Hughes began the improvement of the lot by erecting thereon two frame dwelling-houses, one on the north and the other on the south half, at a cost of about $1,150 each. Hughes used about $1,000 of his wards' funds in the buildings and fences on the lot, and in sidewalks and street assessments.

Appellants Stroh & Smith furnished Hughes $814 worth of materials for use, and which were used, in the construction of the buildings, and filed a mechanic's lien to secure their claim, which was recorded in the miscellaneous record of the county.

On March 26th, 1884, John A. Hughes and wife executed a mortgage on the lot to Martha F. Richey and Frank L. Snyder to indemnify them as sureties on his bond as guardian.

On November 11th, 1884, Hughes and wife executed a mortgage on the lot to Stroh & Smith to secure the payment of a note given by Hughes to them for their claim for materials furnished and used in the houses erected on the lot, and Martha F. Richey and Snyder executed an agreement with Stroh & Smith, making the mortgage of Stroh & Smith prior to the mortgage of Richey and Snyder. Afterwards, in 1885, Hughes and wife, in consideration of the mortgage, and to indemnify Snyder and Richey, conveyed the lot to Snyder.

Fannie C. White brought this action to foreclose her mortgage, making Hughes and wife, Stroh & Smith and others defendants.

Stroh & Smith filed a cross-complaint for the foreclosure of their mortgage.

James and Laura B. Richey, after being made parties on their own motion, filed a cross-complaint by their next friend, Martha F. Richey, claiming the entire interest in the real estate, and asking to have it adjudged that they were the owners of the lot. There was a special finding of facts, in substance as stated, and that the purchase-price of the lot was $700, one-third of which Hughes paid out of the trust funds in his hands belonging to his wards, James and Laura B. Richey, and that Hughes was insolvent and had failed to account for the money in his hands belonging to said wards, and finding the amount due to the parties respectively. As conclusions of law it was stated that the amount due Fannie C. White, on her notes and mortgage, was a first lien on the lot, and that she was entitled to have a foreclosure of her mortgage against all of the parties; that the amount due Stroh & Smith was a lien on the undivided two-thirds of said lot, subject only to the lien of Fannie C. White, and they were entitled to a foreclosure of the same against all the parties to their cross-complaint; that James and Laura B. Richey were the owners in equity of, and entitled to a decree vesting in them the title to, the undivided one-third of said lot against all the parties to their cross-complaint, subject only to the payment of the amount due Fannie C. White, on her mortgage, and to a decree that said one-third owned by them should only be offered for sale in the event that said two-thirds did not sell for a sum sufficient to satisfy the amount due said White on the judgment of foreclosure in her favor, and that in case of the sale of such one-third, the surplus, if any, above paying said White debt, should be paid to James and Laura B. Richey; that the surplus from the sale of the two-thirds, after the payment of the judg-

ments of Fannie C. White and Stroh & Smith, should go to Frank L. Snyder and Martha F. Richey as owners of said two-thirds.

Appellants excepted to the conclusions of law as stated by the court.

It is contended by the attorneys for the appellants, that as a part of the purchase-money paid by Hughes, the guardian of James and Laura B. Richey, for the real estate in question, was the money of said James and Laura B., a trust resulted in favor of them as to the whole lot, and that as Stroh and Smith had knowledge of the trust, therefore they derived no lien by reason of their mortgage. It is not contended but that the lot is liable to the lien for the purchase-money.

The case presented is, the guardian paid one-third of the purchase-money for the lot out of the funds of his wards, and gave his individual notes for the remaining two-thirds—the unpaid purchase-money—took the deed in his own name, and executed a mortgage on the said lot securing the notes given by him for the balance of the purchase-money. There was no agreement as to whom the title was to be made or who the purchase was in fact for.

We have the naked fact of the purchaser paying one-third the price with trust funds belonging to his wards, and he contracting to pay the remaining two-thirds. And it does not appear from the facts found but that the guardian was solvent and abundantly able to pay the amount for which he gave his notes at the date of the purchase.

There was never any part of the two-thirds for which Hughes gave his notes paid, nor was there ever any offer to pay the same, or any part, by either of the wards. The trust arises at the inception of the title, and must depend upon the transaction as it occurred up to that time, and it can not be changed by any subsequent transaction, except as such subsequent transaction may throw light upon the original. *Ap-*

*peal of Cross and Gault,* 97 Pa. St. 471; *Midmer* v. *Midmer,* 26 N. J. Eq. 299.

For a trust to arise in favor of a person paying part of the purchase-money, the amount paid must be a definite aliquot part. If real estate is purchased with funds belonging to more than one person, and the title taken in the name of one, and each pays a certain specific sum and portion of the purchase-money, a trust will result in favor of the persons paying the purchase-money, and their interest in the real estate will be in proportion to the amount of the purchase-money paid. *Olcott* v. *Bynum,* 17 Wall. 44 (59); *Hidden* v. *Jordan,* 21 Cal. 92; *Botsford* v. *Burr,* 2 Johns. Ch. 405; *Bartlett* v. *Pickersgill,* 1 Eden, 515; *Sayre* v. *Townsends,* 15 Wend. 647; 1 Perry Trusts, sections 128, 133; *McGowan* v. *McGowan,* 14 Gray, 119; *Radcliff* v. *Radford,* 96 Ind. 482; *Derry* v. *Derry,* 98 Ind. 319; *Westerfield* v. *Kimmer,* 82 Ind. 365.

The one-third of the purchase-money having been paid with the money of James and Laura B. Richey, a trust resulted as to one-third of the real estate, and no more.

Counsel for appellant cite the case of *Mitchell* v. *Colglazier,* 106 Ind. 464, as sustaining the theory that the title to the whole lot vested in the wards, notwithstanding their money only paid one-third the purchase-price, and that the guardian gave his notes for the remainder.

In that case the wife furnished money to pay the full purchase-price; she was ignorant of the title being in her husband, or of his having given his notes for any part of the purchase-money. The agreement was that the purchase was to be made for her, and the deed taken in her name, and she did pay all the purchase-money as the notes fell due.

It is further urged by counsel, that, as the mortgage was given to Snyder and Martha F. Richey to indemnify them against loss, by reason of being security on the bond of Hughes as guardian of James and Laura B. Richey, the mortgage inured to the benefit of the wards, and they had an

interest in the mortgage, and that Snyder and Martha F. Richey could not, by contract, make their interest in the mortgage lien subsequent and junior to the Stroh & Smith mortgage ; that Stroh & Smith had knowledge of what the mortgage was given for, and of the interest of said James and Laura in the same; that the notice of the mechanic's lien is defective, and Stroh & Smith derived no rights under it, but took the mortgage, with full notice of the equities of James and Laura B. Richey, to secure an existing debt; that Laura B. and James Richey have the right to be subrogated to the interest of Snyder and Martha F. Richey in the mortgage, and as the land had been conveyed to Snyder, that he held it in trust for them. This question is not presented by the record ; the pleadings make no such case as contended for by counsel in their brief. The cross-complaint proceeds upon the theory that, by reason of the investment of the funds of James and Laura B. Richey in the property, the equitable title was in them, and hence neither of the other parties took any interest in the real estate by virtue of their mortgages as against them, and the case was tried upon that theory, as appears from the record. There are some other exceptions taken and errors assigned, but as they are not discussed by counsel in their brief they are waived.

We find no error in the record for which the judgment should be reversed.

Judgment affirmed, with costs.

Filed Feb. 13, 1889; petition for a rehearing overruled April 27, 1889.