Linda J. TERRY and David J. Storie,
Appellants (Plaintiffs Below),

v.

Cora E. WEST, Appellee
(Defendant Below).

No. 18A04–8708–CV–238.

Court of Appeals of Indiana,
Fourth District.

June 14, 1988.
Rehearing Denied Aug. 16, 1988.

Robert S. Koor, Muncie, for appellants.

Richard W. Weir, Alexander & Reed,
Muncie, for appellee.

MILLER, Presiding Judge.

In 1983, siblings Linda J. Terry, age 34, and David J. Storie, age 32, brought this action against their 73 year old maternal grandmother, Cora E. West, claiming that 27 years earlier—in 1956—their maternal grandfather and legal guardian, Herbert West, used their funds to purchase a 28 acre tract including a farmhouse. They sought to impose a constructive trust on the remaining 19 acres which had passed to Cora as the surviving owner upon the death of Herbert in 1970. The trial court made findings of fact and concluded that the wards had failed by clear and distinct evidence to establish facts which supported a finding that a constructive trust existed. The grandchildren appeal, claiming for the most part that 1) undisputed evidence that Herbert failed to account for funds received in their behalf, 2) evidence by three witnesses that he had acknowledged before his death that he had used the children's money to purchase the property in question, and 3) the timing of the purchase, all established that a trust should have been imposed or, in the alternative, caused the burden of proof to shift to Cora. Cora West did not file an appellee's brief.

We affirm.

### FACTS

Linda and David were orphaned at ages 4 and 2, respectively, when both their parents were killed in separate automobile accidents in 1953. They were taken in by their maternal grandparents, Herbert and Cora West, and raised by them to maturity. Herbert was appointed their legal guardian in 1953 and it is undisputed that he received on their behalf $11,280 from 1953 to January 1956, all before the property in question was purchased. Before the purchase, Herbert had also received about $2,455 in Social Security payments. The farm in question was deeded to Herbert and Cora West in May of 1956. There were no financial documents or records which revealed the details of the transaction, such as the price paid or where the money came from to pay for the property. Actually, Cora West represented that she had no financial records of that period. Herbert West never made an accounting of the money he received as guardian. The record reveals that the only actions taken in the guardianship were: (1) the appointment of Herbert as guardian (with no inventory) and the filing of a $1,000 bond on August 26, 1953; (2) the petition to terminate the guardianship, alleging the money had been dissipated, filed by plaintiff, David Jackson Storie, on September 15, 1975; and (3) the closing of the guardianship on September 29, 1975 supported by an affidavit by Irene Krouse, the eldest surviving daughter of the Wests, stating that, based on her personal relationship and not on any records of any kind, the monies received by the guardian had been used for the use and benefit of the wards and no money remained.

The court made the following pertinent findings of fact:

"5. The Court further finds that Herbert West and Cora West from the years 1953 through 1968 were employed gainfully and without question derived a substantial amount of income from their employment.

6. That during the same period of time, they provided the care, maintenance and support of the Plaintiffs in this cause. That over the period of time from 1953 to 1968, being approximately thirteen (13) years the Wests had received some Fifteen Thousand Seven Hundred Thirty-five ($15,735.00) Dollars in Social Security benefits and also had available for the payment of funeral and other bills of the deceased parents of the plaintiffs a sum of money of approximately Ten Thousand ($10,000.00) Dollars. There is a total lack of evidence in this cause to show what amount was spent by the Wests on the plaintiffs in supporting or maintaining them.

7. That the evidence clearly shows that during this same period of time the Wests owned one (1) piece of property which they sold and ultimately purchased the twenty-eight (28) acres of ground in Delaware County, Indiana.

8. That there was a great deal of parole (sic) and contradictory evidence as to whether or not Mr. West had used the funds belonging to the Plaintiffs to purchase the twenty-eight (28) acres of real estate. The plaintiff, Linda J. Terry, testified that she confronted her grandfather, Herbert West, who admitted that he used her money to purchase the real estate and that he would convey it to her. Yet, within a very short period of time she accepted a deed to one (1) single lot. This is typical of the contradictory evidence from all of the various members of the family saying "yes" or "no" that the money had, in fact, been so used. There is no direct evidence tending to prove that Herbert West used the assets belonging to Linda J. Terry or David J. Storie to purchase the real estate in question.

9. That the best that the plaintiffs evidence has done is to prove that Mr. West had an opportunity to use their funds for the purchase of the real estate.

10. That in order to find that the evidence of the Plaintiff is sufficient to carry their burden of proof by parole (sic) evidence alone, it must appear that such evidence is not compatible with any other result. The evidence to support a constructive trust which the plaintiff seeks must possess the qualities of clearness, fullness and persuasiveness required to substantiate the plaintiff's claim as a beneficiary.

11. We do not know what amount of money Herbert West may have spent for medical attention or burial of their parents nor how much money he would have spent to keep his wards and provide them support and care. He could have used their funds as they claim, however, the mere opportunity to do so does not make Mr. West guilty of the wrong claimed nor does it carry the burden of proof which must rest upon the plaintiffs to prove by clear and persuasive evidence the existence of the factual situation necessary to come within the statute. Without such proof it is necessary to hold against the plaintiffs."[1]

(Record at 32–34.)

As noted earlier, the 28 acre farm (the Yorktown farm) was purchased in 1956, at which time, in addition to the grandchildren, Herbert and Cora's six children and two of their spouses moved into the Yorktown property. The record indicates that Linda remained with her grandparents for 13 years, and David several years longer. Over the years Herbert and Cora deeded certain portions of the property to their children and a lot to Linda and Jerry Terry. At the time of the trial, there were about 19 acres remaining on the tract.

The evidence which the grandchildren claim renders the court's judgment contrary to law consists mainly of alleged admissions made by Herbert. Linda testified that in 1969, she, in the presence of her husband, asked Herbert what had happened to her money, and he replied that it was used to purchase the Yorktown farm. Her testimony was corroborated by her husband Terry. In addition, Mary Ruth West, the children's aunt by marriage, testified that she had a conversation with Herbert, with her husband Raymond West present, and Herbert stated he had to use the children's money to help purchase the farm. At the time of trial, Mary Ruth West had been estranged for many years from her husband who testified that no such conversation ever took place.

On the other hand, two of the children of Herbert and Cora, Raymond West and Virginia Koons, testified that, although they did not have documentary evidence, their father had never admitted or acknowledged using the children's money for that specific

---

1. Cora, in her answer, raised two affirmative defenses—that the action was barred by (1) the statute of limitations and (2) IND. CODE 29-1-18-49, which bars an action against the guardian unless suit is commenced within one year from the date of his discharge. The defense of laches was not raised. The court apparently referred to these defenses in finding of fact number 4, stating that he could not, as a matter of law, find that the cause should be dismissed "and without a clear and distinct legal precedent to take away from the plaintiffs their right to their day in Court, the Court feels that it should deny the motion to dismiss and proceed with the consideration of the evidence in this matter." (Transcript at 32.)

purpose and that he did not need their money for the purchase of the Yorktown property. Cora West testified that her husband never stated he used the money for the purchase of the Yorktown property.

The grandchildren in their brief claim that they established a prima facie case and therefore the burden shifted to Cora to establish that Herbert did not use the money to purchase the farm. A review of the pertinent law does not support their theory.

## DISCUSSION AND DECISION

First of all, we have no disagreement with the grandchildren's argument that a legal guardian is accountable for the funds of his wards. In a proper forum, such as a guardianship proceeding or an action against the estate of the guardian, the wards need only show that the guardian received the wards' funds and the burden then shifts to the guardian to account for the funds or suffer a judgment for those monies not accounted for. This is not the situation here. Rather, the wards are trying to establish that a specific portion of their funds was used by their guardian to acquire a specific parcel of land in the guardian and his wife's names. Our supreme court has addressed the situation now before us in *Pillars v. McConnell* (1895), 141 Ind. 670, 40 N.E. 689 (a case cited in the grandchildren's brief). In that case, the allegations of the complaint were stated as follows:

> "That in the year 1870, while appellant was an infant of tender years, the sum of $293.11, being her share of the proceeds of certain real estate sold by a commissioner, came into the hands of her guardian, one John McConnell, who received and held the same in his capacity as guardian; that upon the receipt of said money said guardian commingled the same with his own money, and with this money purchased the real estate in controversy, part of the purchase-price thereof being paid out of said trust fund; that said guardian took the deed for said lands in his own name, and continued to hold the same as his own until the date of his death, to wit, January 28, 1875;

> that an administrator of the estate of McConnell was appointed. Two-thirds of the real estate in question were sold by him to pay debts, upon the order of the probate court, to appellee who was the widow of the decedent, the remaining one-third being set off to her under the statute as such widow.

> The estate was finally settled as insolvent, and no steps were taken in any way looking to the payment or settlement of the amount due from said McConnell to appellant by virtue of his said trust; that during all of said time appellant was an infant, and that she has never been paid said money by her said guardian or by any other party; that appellee, when she purchased said real estate, had full knowledge of the trust existing against the same."

*Id.* at 670–71, 40 N.E. at 689.

The court concluded:

> "It is a well settled rule of the law that where a guardian purchases land with the money belonging to his ward, and takes the title thereto in his own name, thereby a resulting or constructive trust is created in favor of the ward. *Ray v. Ferrell*, 127 Ind. 570 [27 N.E. 159], and cases cited. *But the rule is also firmly settled that the party seeking to establish the trust must clearly and distinctively show that the purchase of the real estate in controversy was made in whole or in part with the trust funds.* Pomeroy Eq. Jur., Vol. 2, section 1049 and 1038; *Ferris v. VanVechten*, 73 N.Y. 113; Perry Trusts, vol. 2, sections 828, 836, 842; vol. 1, section 137." (Emphasis added.)

*Id.* at 671, 72, 40 N.E. at 689. The court in *Pillars* then concluded that the ward failed to establish that any part of her trust fund was used by the guardian in the purchase of the land in question.

Several more recent cases have followed this rule. In *Vonville v. Dexter* (1948), 118 Ind.App. 187, 77 N.E.2d 759, the court stated:

> "In equitable actions of this nature the rule is that 'While a resulting trust may be established by parol evidence: "It is

settled by a complete unanimity of decisions that *such evidence must be clear, strong, unequivocal, unmistakable, and must establish the fact of the payment by the alleged beneficiary beyond a doubt.'* " (Our emphasis.) *Bullerdick et al. v. Miller et al.,* (1926), 85 Ind.App. 369, 378, 152 N.E. 280, 283; *Pillars v. McConnell,* (1895), 141 Ind. 670, 40 N.E. 689; *Hutton et al. v. Cunningham et al.,* (1902), 28 Ind.App. 295, 297, 61 N.E. 1138, 62 N.E. 644. To the same effect see long list of authorities from England, Canada, United States and most of the states of the Union, 23 A.L.R. 1502 to 1516."

*Id.* at 208–09, 77 N.E.2d at 760.

Again, in *Hunter v. Hunter* (1972), 152 Ind.App. 365, 283 N.E.2d 775 (cited in appellants' brief), the court stated:

"Furthermore the Indiana cases have been reluctant to grant such a remedy as a constructive trust thereby effecting restitution to an injured party unless the evidence is clear and so convincing as to leave the mind well satisfied that such a trust exists. *Shapiro v. Rubens, supra; Edmondsen v. Friedell,* (1928) 200 Ind. 298, 163 N.E. 89; *Pillars v. McConnell,* (1895) 141 Ind. 670, 40 N.E. 689."

*Id.* at 374, 283 N.E.2d at 780.

Our supreme court stated in *Melloh v. Gladis* (1974), 261 Ind. 647, 309 N.E.2d 433 (cited in appellants' brief), "[w]e *fully* endorse the proposition that to establish a constructive trust the evidence must be clear and convincing and not compatible with another result." *Id.* at 659, 309 N.E.2d at 440.

■ Also, cited by appellants is *Hughes v. White* (1889), 117 Ind. 470, 20 N.E. 157, which sheds some light on the subject before us. In that case, the guardian purchased one-third of the property out of the ward's funds then gave his own note secured by a mortgage for the balance. Ultimately, the ward claimed that, since his funds had been used as a down payment constituting one-third of the purchase, a trust resulted in the ward's favor as to the *whole* parcel. The court disagreed, stating:

"The trust arises at the inception of the title and must depend upon the transaction as it occurred up to that time, and it cannot be changed by any subsequent transaction, except as such subject transaction may throw light upon the original. (citations omitted) For a trust to arise in favor of a person paying part of the purchase money, the amount paid must be a definite aliquot part. If real estate is purchased with funds belonging to more than one person, and title taken in name of one, and each pay a certain, specific sum and portion of the purchase-money, a trust will result in favor of the persons paying the purchase-money, and their interest in the real estate will be in proportion to the amount of the purchase-money paid. (citations omitted)

The one-third of the purchase-money having been paid with the money of James and Laura B. Richey [the wards], a trust resulted as to one-third of the real estate, and no more."

*Id.* at 473–74, 20 N.E. at 158–59. This case stands for the proposition that the ward must establish what portion of the purchase price was furnished from his funds and he is entitled only to a constructive trust for that portion.

■ Reviewing the evidence presented and the law pertaining to this case (as revealed in appellants' brief), we find the grandchildren have not presented a prima facie case of error on the trial court's part. We find 1) the evidence was conflicting; 2) the strongest evidence favoring the grandchildren was based on the self-serving testimony of plaintiff, Linda, and her husband and the contradicted testimony of her aunt by marriage; 3) the 1956 transaction is clouded in mystery, there being no financial records or documentary evidence which clarified the circumstances of the transaction. We cannot fault the trial court for finding that the evidence was not clear and distinct enough to establish a constructive trust.[2]

2. The case of *Reiss v. Reiss* (1986), Ind.App., 500 N.E.2d 1223, does not support the appellants'

■ In reaching our conclusion to affirm the trial court on this issue, we are not unmindful of the rule that, where an appellee has failed to file an answer brief, we may reverse if the appellant has presented to this court a prima facie showing of reversible error. However, the appellee "is given the benefit on appeal of that view of the evidence most favorable to the trial court's judgment and reversal will ensue only if error is demonstrated in the record and by appellant's brief. *Day v. West* (1978), 176 Ind.App. 15, 373 N.E.2d 935." *Herald Telephone v. Fatouros* (1982), Ind. App., 431 N.E.2d 171, 174.

*Calvert v. London* (1965), 137 Ind.App. 595, 210 N.E.2d 376, was an appeal in which no appellee's brief was filed and the testimony of the mother who attempted to establish paternity was uncontroverted. At trial, the alleged father presented no evidence and later failed to file an appellee's brief. On appeal, this court rejected the contention that the trial court's decision against the mother was contrary to law because it was not sustained by the evidence. This court held the contention to be without merit in light of the rule in this jurisdiction that evidence, uncontroverted, is not necessarily binding on the trier of fact and may be disbelieved and given no weight. *See, A.S.C. Corp. v. First National Bank of Elwood* (1960), 241 Ind. 19, 167 N.E.2d 460. The court, in *Calvert,* concluded:

> "... As a consequence we cannot say that the decision is contrary to law because only the appellant offered oral testimony of facts of which she had the

burden of proof. The trial court was the sole judge of the credibility of the witness and he may have found that the appellant did not prove her case because he simply did not believe her testimony. This he had a right to do. The fact that the evidence was uncontroverted does not justify this Court on review substituting our judgment for that of the trial court. The trial judge had the opportunity to observe the demeanor of the witness (appellant) while testifying, a factor which is intangible and which this Court did not experience. The mere fact that all of the evidence was introduced by the appellant is of no significance in determining its weight. It has been repeatedly held by this Court that this appellate tribunal will not weigh the evidence which is exactly what the appellant is requesting us to do."

137 Ind.App. at 599, 210 N.E.2d at 378.

More recently, we stated:

"... The trier of fact may not arbitrarily disregard evidence, but the evidence as a whole and the circumstances of trial may justify rejection of evidence not directly controverted:

> Among the factors that may be considered in determining the credit to be given to the testimony of a witness are: The interest of the witness, if any, in the outcome of the trial; his bias and prejudice, if any is shown; his opportunity for knowing and recollecting the facts about which he testified; the probability or improbability of his

position. In that case, the decedent's brother transferred to himself and his wife certain bank accounts he held jointly with the decedent. The question before the court was whether a confidential relationship existed between the brother and his sister. However, in that case there was no question with respect to the identification of the accounts that were transferred to the brother and there was no question that the accounts had belonged to the deceased's sister. The court held that "[a] party who seeks to have a constructive trust based on such a violation [the violation of a confidential relationship which results in a benefit to the dominant party in that relationship] has the burden of proving, by clear and convincing evidence, that a confidential relationship existed and that the dominant party

to the relationship sustained an advantage. *McClamroch v. McClamroch* (1985), Ind.App., 476 N.E.2d 514. Once the relationship *and benefit are established,* however, the burden shifts to the dominant party to disprove the exercise of undue influence in obtaining the benefit." 500 N.E.2d at 1226 (emphasis added). The court concluded that under those circumstances the dominant party must rebut the presumption of undue influence by clear and unequivocal proof. Here, there is no question that the guardian is the dominant party. The issue here is whether a benefit was established. The court found to the contrary. Consequently, it was not necessary for the guardian to establish that he did not purchase the property with the ward's funds.

testimony; and his demeanor while on the witness stand.

Goldberg v. Britton, (1949) 119 Ind.App. 90, 84 N.E.2d 201, 203. It has long been recognized that a jury may disbelieve uncontradicted oral evidence, on the basis of credibility."

Gemmer v. Anthony Wayne Bank (1979), 181 Ind.App. 379, 386–87, 391 N.E.2d 1185, 1189, rehearing denied, 181 Ind.App. 379, 393 N.E.2d 784.

Returning to the case before us, even if the testimony of Herbert's alleged admission to Linda and her husband was not directly controverted, still the trial judge here, as did the trial judge in Calvert, could have disbelieved that testimony because of the obvious bias of the witnesses, and, perhaps, because the lapse of time between the alleged admission by Herbert and the testimony in court 16 years later cast some doubt about the substance of the alleged admission.

We also conclude that the appellants' brief does not establish prima facie error with respect to other errors alleged by appellants.

■ The grandchildren complain about the court's finding of fact number 5, which reads as follows:

"5. The Court further finds that Herbert West and Cora West from the years 1953 through 1968 were employed gainfully and without question derived a substantial amount of income from their employment."

The grandchildren acknowledge that Herbert and Cora were employed, but claim

"... there is no evidence to show what they earned, let alone 'substantial' amounts.

First of all, this information had no bearing on the real issue in the case."

(Appellants' Brief at 36.)

The grandchildren make no attempt in their brief to define the word "substantial." However, our supreme court recently stated:

"The term 'substantial' has been defined as 'Something worthwhile as distin-guished from something without value or merely nominal.' Black's Law Dictionary 1597 (Rev. 4th ed. 1968), and 'considerable in degree, amount, or extent....' The American Heritage Dictionary of the English Language 1284 (1975)."

Tyson v. State (1979), 270 Ind. 458, 466, 386 N.E.2d 1185, 1191. Our supreme court, in determining whether there was substantial evidence to sustain a conviction has said

"We use the word 'substantial' as meaning more than 'seeming or imaginary'."

Baker v. State (1956), 236 Ind. 55, 60, 138 N.E.2d 641, 644. With this in mind, we address the grandchildren's argument which appears to be that the language stating the grandparents earned substantial amounts of money over the 15 year period clearly means that they earned "huge" amounts. This is not the case. The finding merely indicates the judge's conclusion that the grandparents earned more than a minimal or nominal amount. Since the grandparents managed to raise their own children and their grandchildren over that period, there was ample evidence supporting the finding.

The grandchildren next object to the court's finding number 6, which reads as follows:

"6. That during the same period of time, they provided the care, maintenance and support of the Plaintiffs in this cause. That over the period of time from 1953 to 1968, being approximately thirteen (13) years the Wests had received some Fifteen Thousand Seven Hundred Thirty-five ($15,735.00) Dollars in Social Security benefits and also had available for the payment of funeral and other bills of the deceased parents of the plaintiffs a sum of money of approximately Ten Thousand ($10,000.00) Dollars. There is a total lack of evidence in this cause to show what amount was spent by the Wests on the plaintiffs in supporting or maintaining them."

In this regard, the grandchildren make the following argument:

"The Social Security money was received over a period of 15½ years, in monthly installments beginning March, 1953 and ending November, 1968. (Tr. V. 1, p. 72, Pltffs. Exh. 2).

The only evidence on funeral bills is Defendant's Exhibit A (Tr. V. 1, p. 90) which was a check for $268.80 to Walker Funeral Home dated February 13, 1954. There was never any explanation given for this, either.

The court in finding that during this time the Wests provided for the care of Linda and David is likewise erroneous because the court ruled that the only issue was whether Herbert West took Linda's and David's money and bought the land with it.

In addition, with eight or ten children living under one roof, it is reasonable to conclude that the money was used for all the children, not just Linda and David.

However, the important point is that the court reversed himself by considering evidence that was not relevant and injecting a non-issue into the case and basing his decision on it."

(Appellants' Brief at 37.)

It is difficult to follow the grandchildren's argument with respect to this finding. They acknowledge that the finding pertaining to Social Security payments was correct. Then they state the only evidence on funeral bills was a check for $268.80 paid in 1954. However, the language of the finding does not state what was *spent* for funeral and other bills of the deceased parents—it merely states that the $10,000 was *available* for payment.

They do not object to the finding that the Wests provided for the care of Linda and David as lacking evidentiary support. They merely claim that this was a non-issue. They also claim that it is reasonable to conclude that some of the children's money was used to support Herbert's other children. In this regard, they are asking us to reach a conclusion on conflicting evidence that the court did not reach.

▮ Finally, they claim that their "important point" is that the court considered evidence that was not relevant and based

his decision on it. After reading all of the court's findings, we do not find this to be the case. There was, admittedly, much background, peripheral information in the findings. We acknowledge the true issue to be whether or not a specific sum of money, that is the approximately $13,000 of the children's money, which Herbert had collected from 1953 to 1956, was used to purchase a portion or all of the Yorktown property. The court addressed this issue in finding number 8 where he found the evidence to be contradictory and lacking directness as to whether all or part of the assets were used to purchase the real estate.

The grandchildren next assert that the court's finding number 7 is clearly erroneous. That finding was as follows:

"7. That the evidence clearly shows that during the same period of time [1953 to 1968] the Wests owned one (1) piece of property which they sold and ultimately purchased the twenty-eight (28) acres of ground in Delaware County, Indiana."

The grandchildren point out that the property referred to in that finding which was sold was the home they lived in with their grandparents before they purchased the Yorktown property. They point out that the Yorktown farm was deeded in May of 1956, which deed was recorded in March of 1957, more than six months *before* the sale of the Beacon Street property. The record reveals that the deed to the Beacon Street property was dated in October of 1957. In addition, Raymond West testified that, according to his memory, the proceeds of the Beacon Street sale were used to rebuild the house on the Yorktown farm.

It does appear that, if the court felt the Beacon Street property was sold before the Yorktown farm was purchased, such a conclusion was erroneous. But, of course, we must observe that since these transactions lacked documentation, the possibility does exist that money exchanged hands on the Beacon Street property in some manner before the deed was executed. Assuming, however, that such a finding was erroneous, we still find that the judgment of the court was supported by the remainder of

the findings made. As we have stated before in this opinion, the grandchildren have the burden of showing that their monies were used to purchase the Yorktown farm. The erroneous finding in the court's finding number 7 does not resolve this issue. We consider it surplusage. Judge Hoffman addressed this issue in *Matter of Perkins* (1976), 170 Ind.App. 171, 352 N.E. 2d 502, as follows:

"Appellants' final contentions pertain to the findings made by the trial court. The appellants assert that portions of certain of such findings are clearly erroneous, and urge such defects as a ground for a reversal of this cause. However, even assuming, *arguendo*, that such portions of the findings made by the trial court are erroneous, the decision of the trial court is supported by the remainder of the findings made, and the portions challenged by appellants may be treated as surplusage. Appellants have shown no prejudice warranting a reversal of this cause. *Reg. & Mgt. Corp. v. City of Hammond* (1972), 151 Ind.App. 471, 280 N.E.2d 327."

*Id.* at 184–85, 352 N.E.2d at 510–511.

The grandchildren also allege the trial court erred in admitting defendant's Exhibit B, a copy of a Federal Land Bank mortgage on the Yorktown farm from Herbert and Cora West dated and recorded October 1957, on the basis that the Yorktown farm deed was executed in 1956 and recorded in March of 1957. Thus, they claim the mortgage information was immaterial and irrelevant because the proceeds from that mortgage could not have been used to purchase the property. The grandchildren's claim is without merit for the simple reason that their own exhibit number 23, which was an abstract of the Yorktown farm property revealed that very same mortgage. *See* Appellants' Brief p. 18.

■ Next, the grandchildren claim that an incident which arose during the trial of the cause involving the separation of witnesses revealed the bias of the trial judge against them. Jerry Terry, Linda's husband, testified that during the trial he saw Vincent West talking to the rest of the

family who were witnesses, but he "didn't hear them discuss anything." Vincent West testified that he talked to the other members of the family, but didn't discuss their testimony. The judge then stated:

"Mr. Koor (the grandchildren's attorney), I think your client is paranoid. The fact that people talk doesn't indicate that there is anything wrong. You know, I was talking to that man myself out at the elevator. You know, just at the last recess, I said, 'the damned elevator never comes up when you want it,' and he said, 'that's right.' What your client is saying is that he wants to supposed somebody is after him. I really don't think there's any basis for it.... Well, there's two sides out there. They're all chosen up in sides, Bob. You have no evidence of what you are saying, absolutely none. The man didn't hear anything said. Because he saw people talking, they are plotting against him. That's paranoia. Okay. Let's get going. Bring Mr. West back in, Raymond."

We do not believe the language of the judge indicates he was biased in this matter. One of the dictionary definitions of the adjective "paranoid" is: "characterized by suspiciousness." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY p. 1638. People often say about themselves that "I am paranoid on this or that subject." They certainly are not acknowledging they are mentally ill. Thus, we find that the court was merely admonishing counsel that his clients were overly suspicious under the circumstances. There is no authority cited by appellants for the proposition that such a mild comment would show bias on the part of the trial judge.

■ Finally, the grandchildren claim that the bias of the trial judge was obvious because, after the evidence was heard, the parties were given approximately 30 days to file proposed findings and conclusions and exchange them. The grandchildren filed theirs on schedule, but Cora's were not filed until 90 days later. The grandchildren point out that "This procedure was error by the court, because no ruling had been made within ninety (90) days after the

court took the matter under advisement." (Appellants' Brief at 50.) The grandchildren also acknowledge that the matter was not withdrawn from the trial court under Trial Rule 53.2(A), but they state the excessive delay in allowing Cora three additional months without any sanctions "shows that the court favored her position and was not considering what Linda and David had to say." (Appellants' Brief at 50.) This is the entirety of their argument. They cite no authority which would support our finding that the delay shows bias as a matter of law. This would be pure speculation on our part.

The judgment is affirmed.

GARRARD, P.J., concurs.

CONOVER, J., dissents with separate opinion.

CONOVER, Judge.

I respectfully dissent.

The uncontroverted evidence demonstrates clearly and unequivocally, (a) decedent grandfather breached his trust as guardian, (b) Terry and David's funds were used to purchase the farm real estate in question, and (c) they were to get the farm after Herbert's death. Thus, the evidentiary burden shifted to defendants-appellants below and they have failed to prove to the contrary.

The testimony of Linda J. Terry and her husband, Jerry, stands undisputed in this record. When Linda asked her grandfather Herbert, her guardian, in April, 1969, whether he had used her and David's money to buy the Yorktown farm property, he told her yes, he did purchase the property with her and David's money. He had given each one of his children a lot which would be considered their inheritance, and at his death the property would go to Linda and David.

The majority mistakenly characterizes such testimony as a self-serving declaration. It is true a party may not give into evidence his out of court declarations which further his personal interests in the litigation. *Beard v. Dodd* (1973), 156 Ind.App. 322, 296 N.E.2d 442, 443; *Hardiman v.*

*Hardiman* (1972), 152 Ind.App. 675, 284 N.E.2d 820, 823–824. See also *Jones on Evidence*, 6th Edition § 4.61 at 514–515 (1972). However, that testimony, received without objection, related to grandfather Herbert's out of court statements, not Linda's or her husband's. In fact, that testimony related to grandfather Herbert's admissions against interest and was admissible as such. An admission is a statement against interest of a party that is inconsistent with his defense or tends to establish or disprove a material fact. *Senff v. Estate of E. Levi* (1987), Ind.App., 515 N.E.2d 556, 559–560. The death of such party does not render his admission inadmissible. *Id.*

An admission against interest by a former owner of real estate made while he was in both ownership and possession is admissible in evidence and binds those in privity with him and his successors in interest. *Robbins v. Spencer* (1894), 140 Ind. 483, 38 N.E. 522, *reh. denied* 140 Ind. 483, 40 N.E. 263; *Mull v. Orme* (1879), 67 Ind. 95, 99; *Donner v. Griffith* (1919), 71 Ind. App. 693, 122 N.E. 23, 25. See also *Taylor–Reed Corp. v. Mennen* (C.A. 7, 1963) 324 F.2d 108, 112.

Next, a trial court cannot ignore competent, uncontroverted evidence. *Gossett v. Auburn Nat'l. Bank of Auburn* (1987), Ind.App., 514 N.E.2d 309, 312; *Steenhoven v. College Life Ins. Co.* (1984), Ind.App., 458 N.E.2d 661, 666, fn. 13. While the evidence of another admission by grandfather made to Mary Ruth West, Linda's aunt, was disputed by Mary's estranged husband, nothing in this record disputes the admission grandfather Herbert made to Linda and her husband. The trial court and this one on appeal are bound by it. Vague general statements by Herbert's children their father, Herbert, had never made such an admission to them, and he did not need his grandchildren's money anyhow, does not put the making of Herbert's admission to Linda and her husband into dispute in my opinion.

It is uncontroverted grandfather Herbert was Linda and David's court-appointed guardian and that he failed to account for

*any* of the money paid to him as guardian on their behalf. Thus, without question, a confidential relationship existed between them and grandfather Herbert breached his trust. Further, as noted above, he used his grandchildren's money to buy the farm. Under this clear and convincing evidence, a constructive trust of the Yorktown farm property in favor of Linda and David was established. At that point, the burden of proving by clear and convincing evidence the dominant party, grandfather Herbert, did not breach his trust or gain an unconscionable advantage, shifted to the appellee Cora, his successor in interest. *McClamroch v. McClamroch* (1985), Ind.App., 476 N.E.2d 514.

In my opinion she has not discharged her burden. I would reverse the trial court, and remand this cause for a new trial.