**In re The Marriage of Peggy RAMSEY, Respondent–Appellant,**

**v.**

**Irvin RAMSEY, Petitioner–Appellee.**

**No. 48A04–8802–CV–41.**

Court of Appeals of Indiana,
Third District.

Dec. 7, 1989.

---

**2.** Counsel for defendants Belcher and Coleman.

Ronald McNabney, Anderson, for respondent-appellant.

William J. Norton, Anderson, for petitioner-appellee.

GARRARD, Presiding Judge.

In October 1987 the court dissolved the marriage of Irvin Ramsey and Peggy Ramsey. Their marriage of 20 years had produced five children: Eric, age 19 (still living at home while attending Ball State University), Dawn, age 16, Leif, age 14, Ian, age 11 and Brandie, age 9. The wife was awarded custody of the minor children and the husband was ordered to pay $170 per week in child support and an additional $200 per year per child clothing allowance payable on or before August 1 each year. In addition, he was ordered to provide health insurance for the children and to pay 100% of all uninsured expenses. He was also ordered to continue to pay the college expenses of Eric and to provide college expenses in the future for any of the other children as might become necessary.

The husband worked for Delco–Remy Division of General Motors and in 1986 earned approximately $37,000. At the time of trial the husband's gross earnings were about $500 per week and his net earnings were approximately $350 per week.

The wife worked intermittently during the marriage. At the time of trial she worked in the cafeteria at the local high school and earned an average net income of $60 per week.

The marital residence is the most valuable asset of the parties. It is worth approximately $37,900 subject to a mortgage with an unpaid balance of approximately $14,000. Mortgage payments are approximately $265 per month. Insurance amounts to $20 per month and property taxes $30 per month. Utilities at the time of trial were $65 for electricity, $25 for telephone, $36 for gas and $11 for cable television.

The trial court divided the property evenly between the parties. The marital residence was ordered to be sold and the net proceeds divided evenly. The wife was awarded one half of the husband's pension valued as of September 1, 1986 but not payable until the husband becomes eligible to receive his benefits.

The wife appeals asserting that the trial judge abused his discretion in not awarding her the use of the marital residence during the minority of the children and in determining the amount of child support.

I.

Wife asserts the division of property was an abuse of discretion because the court ordered the marital residence sold rather than awarding her its use during the minority of the children. She presents persuasive argument why it would have been a proper exercise of the court's discretion to permit her to continue using the home. We do not disagree, but neither are we persuaded that the court abused its discretion acting as it did.

While the statute permits consideration of the use she contends, IC 31–1–11.5–11 expressly authorizes the court to take the precise action it took.

Nor are the circumstances such to drive us to the conclusion that ordering sale was

*clearly* against the logic and effect of the circumstances before the court. For one thing it was the court's province to make any credibility determinations and to determine the weight of the evidence. Having viewed the witnesses first hand, the court might have concluded that such an arrangement would not, in fact, have worked as well as she portrays it to us.

That we might have made a different choice is not the question. The court did not abuse its discretion in acting as it did.

## II.

 Wife also contends the court failed to order enough support. Again we can find no abuse of discretion. Her argument essentially asks us to reweigh the evidence and choose inferences other than those chosen by the court. That is not our appellate function.

The appellant has failed to demonstrate error.

Affirmed.

CHEZEM, P.J., concurs.

MILLER, J., dissents and files separate opinion.

MILLER, Judge, dissenting.

I dissent. The majority seems to be saying that the trial judge had the statutory power to order the sale of the property; that such power is unbridled, and, since he has the power, he did not abuse his discretion by exercising it. That is not our standard of review. Whether the trial judge abused his discretion is wholly dependent upon the facts and the circumstances presented at trial. The majority opinion is devoid of pertinent facts.

Peggy asserts the trial court abused its discretion by ordering the immediate sale, and division of the proceeds, of the marital residence. She argues that, because she has custody of four minor children and the nineteen-year old lives at home while commuting to and attending Ball State, she should be allowed to reside with the children in the marital residence until the youngest reaches the age of majority. Then, she proposes, the residence could be sold and the proceeds divided. She asserts that she and the children would be unable to find any other living accommodations nearly as comfortable as the marital residence that she could afford on her salary and the child support. She argues continuous residence in the marital home is in the children's best interests because a move, especially a move to less comfortable accommodations which would effectively lower the children's standard of living, would be traumatic. The stability of remaining in the familiar home would be helpful to the children during the painful period associated with divorce.[1]

Irvin testified at trial that he would like to receive his share of the equity, approximately $12,000.00, as part of the property settlement. However, *he testified that what he wanted most out of the divorce proceedings was to continue to be able to see his children daily.* He wished for Peggy and the children to remain in the home. He rented an apartment 3 or 4 blocks from the marital residence in order to be able to see the children easily. On the witness stand, he suggested that Peggy could refinance the home, pay him for his interest, and continue to live there with the children.

Irvin failed to file an appellee's brief. Therefore, Peggy's burden on appeal is to present to this court a *prima facie* showing of reversible error. However, Irvin is given the benefit on appeal of that view of the evidence most favorable to the trial court's judgment and reversal will ensue only if error is demonstrated in the record and by appellant's brief. *Terry v. West* (1988), Ind.App., 524 N.E.2d 343.

When reviewing a claim that the trial court improperly divided marital property, we must decide whether the trial court's

---

**1.** Peggy has consistently offered, at the trial and in her brief, that if she were awarded possession of the marital residence she would be responsible for the mortgage payments, utilities, insurance, taxes, and other expenses associated with the upkeep of the marital residence out of her salary and the child support.

decision constitutes an abuse of discretion. *Van Riper v. Keim* (1982), Ind.App., 437 N.E.2d 130. We presume the trial court followed the law and made all the proper considerations in making its decision. *White v. White* (1981), Ind.App., 425 N.E.2d 726. We will reverse only if there is no rational basis for the award; that is, if the result is clearly against the logic and effect of the facts and the reasonable inferences to be drawn therefrom. *In re Marriage of Salas* (1983), Ind.App., 447 N.E.2d 1176.

IND.CODE 31–1–11.5–11(b) & (c) specifies the methods to be employed and the factors to be considered by a trial court in dividing the property in a dissolution action. It reads:

(b) In [a divorce action], the court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts, in a just and reasonable manner, by:

(1) Division of the property in kind;

(2) Setting the property or parts of it over to one of the spouses and requiring either spouse to pay such sum, either in gross or in installments, as may be just and proper;

(3) Ordering the sale of the property under such conditions as the court may prescribe and dividing the proceeds of the sale; or

(4) Ordering the distribution of any benefits described in section 2(d)(2) or 2(d)(3) [pension-like benefits] ... of this chapter that are payable after the dissolution of marriage, by setting aside to either of the paries a percentage of those payments either by assignment or in kind at the time of receipt.

(c) The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

*(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of any children.*

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties. (emphasis ours)

At the outset, we should take notice that our statute expressly recognizes the practical necessity of a trial court to consider the issues of a property settlement and child support *together.* I.C. 31–1–11.5–11(c)(3) (quoted above). Peggy has cited no Indiana case, nor am I aware of any, where the failure to award the marital residence to the custodial parent was held to constitute an abuse of discretion. However, other jurisdictions have had extensive experience in weighing property distribution concerns with those of child custody and support. For example, in Colorado, a trial court's property division must be reviewed in relation to its orders on maintenance, child support, and attorney fees. *In re Marriage of Schulke* (1978), 40 Colo.App. 473, 579 P.2d 90, *cert. denied* 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 170. The Illinois appellate courts have interpreted their state's statutory scheme for divorce cases as allowing spousal maintenance only if the spouse seeking maintenance lacks sufficient property to be able to support him or

herself and that child support was also partially predicated upon the adequacy of the financial resources of the custodial parent. *In re Marriage of Amato* (1980), 80 Ill.App.3d 395, 35 Ill.Dec. 729, 399 N.E.2d 1018. *see also*, Annotation: *Divorce and Separation: Effect of Trial Court giving Consideration To Needs of Children In Making Property Division—Modern Status*, 19 ALR4th 239 (1983).

In *Goar v. Goar* (1985), Minn.App., 368 N.W.2d 348, the immediate sale of the marital residence was held to be improper notwithstanding the mother's wish to obtain her share of the equity. The custodial father operated an upholstery business in the home and the four minor children had close ties to the neighborhood. The *Goar* court held:

> The trial court here made no finding to indicate it had considered the impact which immediate sale of the homestead would have upon the parties and upon the best interests of the minor children....

> Balanced against the considerations affecting father and the minor children is the mother's desire to obtain her share of the homestead equity immediately. While we are not insensitive to her understandable wish to have these funds made available to her immediately, we cannot affirm the trial court determination to order an immediate sale.

> This court can discern from the record none of the balancing and weighing which must inevitably accompany a trial court decision to add the additional trauma of change of residence to that already present in the lives of children as a result of their parents' dissolution. In so holding, we recognize, of course, that there may sometimes be circumstances which would necessitate the immediate sale of a homestead against the wishes of the custodial parent. These circumstances might include, ... a prohibitively high cost of maintaining the homestead. We do not find such circumstances here. *Id.* 368 N.W.2d at 351.

New York has addressed the problem in the case at bar at least three times. In *Patti v. Patti* (1984), 99 A.D.2d 772, 472 N.Y.S.2d 20, the trial court erred in directing the immediate sale of the marital home where the living expenses for the custodial wife and 14 year-old son in event of sale would exceed ex-wife's meager income, and home was located in neighborhood in which son had lived all his life. In *Cassano v. Cassano* (1985), 111 A.D.2d 208, 489 N.Y. S.2d 243, the trial court improperly ordered the sale of marital residence absent evidence of availability of suitable replacement housing for custodial mother, or evidence of effects of relocation upon children. Finally, in *Flanagan v. Flanagan* (1986), 118 A.D.2d 681, 500 N.Y.S.2d 34, the trial court erred in ordering the sale of the marital residence six months after the entry of the divorce decree solely out of concern for the financial condition of the parties, where wife was awarded custody of the two minor children.

I am impressed with the authority from the other jurisdictions. I note that the facts in the case at bar militate toward reversal more than the cases from the foreign jurisdictions. In the case at bar, *five* children still live at home. *Both parents* wish for the custodial parent, Peggy, and the children to remain in the marital residence. (Irvin would like to be paid for his equity interest *and* have Peggy and the children remain in the marital residence.) Peggy has but meager resources available to house the five children. I recognize her undisputed testimony that she would be unable to provide equivalent accommodations for the children at a cost similar to that incurred living in the marital residence—which means a move would necessarily cause the children to suffer a decline in their standard of living. I further recognize her testimony that she could afford the mortgage payments and meet the expenses associated with the upkeep of the marital residence. Moreover, I believe moving out of the familiar home into poorer accommodations would inject additional needless trauma into the lives of the children that are already necessarily traumatized by the divorce.

The majority's abuse of discretion analysis reminds me of our analysis of dissolu-

tion property divisions before the legislature's amendment of I.C. 31–1–11.5–11(c) which imposed the 50–50 split presumption upon trial courts. I am reminded of the following language in our opinion, *Lord v. Lord* (1982), Ind.App., 443 N.E.2d 847, 850:

> We recognize that this standard [abuse of discretion] is imprecise. The exercise of discretion should be governed by standards and procedures aimed at securing a more meaningful appellate review. Guidance should be given to the trial judge by not only specifying the factors which are important, but the range of choice within which the trial judge may properly act. The General Assembly has provided some direction by Ind.Code 31–1–11.5–11; however, the range of choice remains limitless. . . . Hence, our review of the exercise of discretion in most of these cases is meaningless. Absent an error of law, we merely pronounce in conclusory terms whether there was an abuse of discretion in the particular circumstances. (footnote 4)

I believe that our responsibility as an appellate court reviewing the exercise of trial court discretion to involve more than a "rubber stamping" of a trial court's decision that may be arbitrary and capricious. Although the majority concedes that the trial court can, under appropriate circumstances, abuse its discretion, I fail to see how—if the present circumstances do not constitute an abuse of discretion—that an abuse will ever be found.

The majority states that the trial court, having viewed the witnesses first hand, could have concluded that such an arrangement (allowing Peggy and the children to remain in the house) would not, in fact, have worked as well as she portrays it to us. However, we must consider the alternatives available to the trial court and the Ramsey family in order to effect a meaningful analysis of whether the order to sell the house was clearly against the logic and effect of the circumstances before the court. Peggy still has five children to house. Irvin still wants to live near the children—which is why he rented an apartment near the marital residence. I do not see how the trial court's observation of Peggy's and Irvin's respective demeanors and appearances could impact this analysis of alternatives. I cannot conceive of how the trial court's interpretation of a witness's furtive gesture will enable it to determine that the sale of the house—with the attendant expenses of selling the house and moving Peggy, the five children, and perhaps Irvin too (in order to be near the children)—will be more "workable" than to allow Peggy to remain in the house with the children.

Admittedly, a trial judge has the power to weigh the testimony of a witness and, in certain circumstances, to disregard it, in part or in whole. But this power is normally exercised in adversary proceedings where the surrounding circumstances indicate the possibility of fabrication. After all, here the trial judge had to believe some of the evidence. Otherwise, following the logic of the majority, the judge could have disbelieved testimony of both the husband and wife establishing an irretrievable breakdown of marriage and denied the dissolution petition—an obvious abuse of discretion. The situation here is not one in which the court can completely disregard the wishes and desires of *both* the husband and wife. When such desires are clearly in the best interests of the parents and the children, they may not be disregarded based on a whim or a reason hidden in the judge's mind that is not discernible from the record. This is especially true here where the judge's "solution" is merely shifting bodies from one house to another (at an unknown location) without any evidence of an expectation that his "solution" creates any possibility whatsoever of an improved scenario.

I would find that the trial court in the case at bar abused its discretion by ordering the immediate sale of the marital residence. The trial court made no express findings concerning the best interests of the children with respect to sale of the home. Nor am I able to discern that the trial court weighed the children's interests in this decision. I find the trial court's order to sell the marital residence clearly

against the logic and effect of the circumstances.

I would remand with instructions that the trial court enter an order allowing Peggy to live in the marital residence during the minority of her children. Therefore, I dissent.

### Child Support

In the case at bar, the trial judge's award of child support was based in conjunction with his decision that the marital residence would be sold, the proceeds divided, and Peggy and the children would seek new lodgings. Under the first issue (the order of the sale of the marital residence), I would hold that the property division cannot be decided in a vacuum and must be considered in conjunction with the best interests of the children. Similarly, the order of child support cannot be effected without consideration of the disposition of the marital residence. If we were to reverse the disposition of the marital residence, the trial court must be afforded another opportunity to craft an award of child support in light of our decision. However, I would not foresee a reduction in the amount of child support awarded.

Even if we do not reverse the order to sell the marital residence, I believe Peggy has met her burden on appeal demonstrating the trial court abused its discretion in crafting an award of child support. Again, I note that the majority opinion is devoid of pertinent facts—facts which are essential in conducting a meaningful analysis under the abuse of discretion standard.

Peggy argues the trial court failed to order Irvin to pay enough child support. She argues that her duties as the custodial parent of four minor children—plus the responsibilities associated with having a nineteen year-old living at home—greatly diminish her ability to contribute to the financial support of the children. She also points to the relative disparity between her income and earning ability and Irvin's. She demonstrates, through evidence in the record, that the children's standard of living would be diminished from its level during the marriage to its level under the present order of support. Finally, she again demonstrates, through evidence in the record, that because Irvin is presently supporting his sister and nephew, he could afford to provide more financial support for his own children (to whom he owes a duty to support).

The trial court may order a reasonable amount for child support after considering all relevant factors. IND.CODE 31–1–11.–5–12. Determination of child support is left to the sound discretion of the trial court. The decision will be overturned only if it is against the clear logic and effect of the circumstances. *Wright v. Wright* (1984), Ind.App., 471 N.E.2d 1240. The statutory factors the trial court must consider, as prescribed by I.C. 31–1–11.5–12, read as follows:

(a) In [a divorce action], the court may order either parent of both parents to pay any amount reasonable for support of a child, without regard to marital misconduct, after considering all relevant factors including:

(1) The financial resources of the custodial parent;

(2) The standard of living the child would have enjoyed had the marriage not been dissolved or had the separation not been ordered;

(3) The physical or mental condition of the child and the child's educational needs; and

(4) The financial resources and needs of the noncustodial parent.

Concerning the first (and fourth) factor, Peggy is the custodial parent of four minor children. A nineteen year-old lives at home. Her job at the school cafeteria provides only an average of $60.00 per week. Realistically, she has very little ability to contribute to the financial support of the children. In *In re the Marriage of Heinemann* (1981), Iowa App., 309 N.W.2d 151, the court noted that although both parents had the same legal duty to support their children, the obligation to support is not necessarily to be borne equally, but instead should be apportioned according to the reasonable ability of each parent to contribute. The court held that because the wife had

significant child-rearing obligations at home and a diminished earning ability, she could be realistically expected to contribute "virtually nothing" to the financial support of the children. The same is true in the case at bar. Peggy's enormous responsibilities as the custodial parent of five children coupled with her meager earnings compared to Irvin's financial resources and needs militates toward a large child support award.

Concerning the second factor, Peggy demonstrated by evidence in the record the children would enjoy a lower standard of living under the present child support order than they would have enjoyed had the marriage not been dissolved. Irvin earned $350.00 per week and Peggy earned $60.00 per week for a combined income of about $410.00. This translates to an average of slightly less than $60.00 per person for the seven member family. Under the order—that provides for $170.00 per week child support, $1,000.00 per year clothing allowance, and a $2,000.00 per year allowance for college expenses—the per capita resources available to the children equals less than $45.00 per child. This constitutes a 25% drop in income translating to a lower standard of living for the children.

Finally, specifically concerning the fourth factor—Irvin's financial resources and needs—Peggy makes the following argument in her brief:

> The husband, according to the financial declaration he has filed in this case, is providing room and board for his sister who is employed at Delco–Remy and her adult son. He is not reporting the receipt of any rent from them and he claims he is paying her over $100.00 a month on a claimed $450.00 loan. Since the husband is able to support his employed sister and her adult son, it is readily apparent that his financial needs and resources would easily enable him to provide a level of support to his children more nearly appropriate for their needs. However noble the father's desire to support his sister and nephew might be, in matters of support, "the best interest of the child are paramount." *Geberin v. Geberin* (1977), 172 Ind.App. 255, 360 N.E.2d 41, 46.

I would hold that Peggy has met her burden of showing *prima facie* error in the order of child support by the arguments in her brief that are supported by the record. (This is her burden because Irvin failed to file an appellee brief. *see Terry v. West supra.*) Therefore, I would reverse and remand with instructions to the trial court to enter an order of child support sufficient (larger than the present order) to satisfy the statutory factors as analyzed in this opinion.

I would reverse and remand with instructions that the trial court enter an order allowing Peggy and the children to remain in the marital residence. To this end I would permit the trial court to craft a child support order appropriate for those circumstances. Nevertheless, even if the trial court did not abuse its discretion in the order to sell the house, I would find that Peggy has met her burden on appeal in demonstrating an abuse of discretion in the award of child support. I would reverse and remand with instructions the trial court enter a larger award of child support in accordance with this opinion. Therefore, I dissent.